FILED
OCT 2 3 2003
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THE ALASKA CONSTITUTIONAL LEGAL )
DEFENSE CONSERVATION FUND, INC., )
et al., )
　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　 )
　　　vs.　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　 )
GALE NORTON, Secretary of the　 )
Interior, et al.,　　　　　　　　 )
　　　　　　　　　　　　　　　　 )　No. A00-0167-CV (HRH)
　　　　　　　　　　　Defendants. )
_____)

O R D E R

Motion for Partial Judgment on the Pleadings

　　　Defendants move for partial judgment on the pleadings.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

　　　Plaintiffs are The Alaska Constitutional Legal Defense Conservation Fund, Inc. (ACLDCF) and the following individuals: Dale Bondurant, Warren Olson, Daniel A. Devereux, Shannon Farrah, James P. Jacobson, W. Tom Minter, and Gary Younkin. Defendants are the United States; Gail Norton, Secretary of the Department of Interior; Ann Veneman, Secretary of the Department of Agriculture;

---

[1]　Clerk's Docket No. 64.

[2]　Clerk's Docket No. 71.

- 1 -

EXHIBIT 1
Page 1 of 20

Kathleen Clarke, Director of the Bureau of Land Management; Dale Bosworth, Chief of the United States Forest Service; Thomas H. Boyd, Assistant Regional Director of Subsistence for the Department of Interior; and Steve Kessler, Regional Subsistence Program Leader for the United States Forest Service.

This case arises out of defendants' implementation of the rural preference for subsistence hunting and fishing on Federal lands found in Title VIII of the Alaska National Interest Lands Conservation Act of 1980 (ANILCA), 16 U.S.C. §§ 3111-26.[3]

ANILCA establishes a preference for customary and traditional uses of fish and wildlife by according a priority for the taking of fish and wildlife on federal public lands in Alaska for non-wasteful subsistence uses by rural Alaska residents. 16 U.S.C. § 3114. The federal government, through the Departments of Interior and Agriculture, has assumed management of hunting and fishing on federal public lands in Alaska. In 1990, the Secretaries of Agriculture and Interior created the Federal Subsistence Board (FSB) to administer the subsistence preference in Alaska.[4] See 50

---

[3] The court notes the convergence of this case and Safari Club International v. Demientieff, Case No. A98-0414-CV (HRH). The court sees no need to consider consolidation of the two cases. Indeed, that might be counter-productive. However, the court will coordinate the management of these two cases. To that end, plaintiffs' counsel in each case will please familiarize themselves with developments in and the status of the other case. All counsel in each case will please serve all motion papers (as well as any other documents of substance filed with the court) upon counsel in the other case; and the court will serve all counsel in both cases with all substantive orders.

[4] Prior to 1990, and pursuant to 16 U.S.C. § 3115(d), the
(continued...)

C.F.R. § 100.10(a) (1991). Pursuant to 16 U.S.C. § 3115(a), the Secretaries, through the FSB, have established ten Regional Advisory Councils. The Regional Advisory Councils are charged with making recommendations to the FSB concerning subsistence uses and needs within their respective regions. See 16 U.S.C. § 3115(a). The Secretaries, and by extension the FSB, are required to consider Council recommendations "concerning the taking of fish and wildlife on the public lands...." 16 U.S.C. § 3115(c).

Plaintiffs commenced this action on June 6, 2000, alleging that they have been denied hunting and fishing opportunities on federal public lands because they are not rural residents of Alaska. Plaintiffs' original complaint set forth four causes of action: 1) a violation of the Equal Footing Doctrine, the Submerged Lands Act of 1953, and the Alaska Statehood Act; 2) a violation of the Tenth Amendment of the Constitution and the Enumerated Powers Doctrine; 3) a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and 4) a violation of the Administrative Procedures Act.[5] Defendants moved to dismiss all counts of plaintiffs' complaint.[6] Defendants' motion to dismiss was

---

[4] (...continued)
State of Alaska was administrating the subsistence preference established by ANILCA. Alaska's qualifying subsistence law was declared unconstitutional by the Alaska Supreme Court in 1989. See McDowell v. State, 785 P.2d 1 (Alaska 1989).

[5] Complaint for Declaratory Judgment and Injunctive Relief, Clerk's Docket No. 1.

[6] Clerk's Docket No. 21.

- 3 -

EXHIBIT 1
Page 3 of 20

granted as to Counts One and Two.[7] It was also granted as to Count Four because the court concluded that plaintiffs had abandoned their APA claim.[8] As to Count Three, defendants' motion was denied to the extent that plaintiffs were asserting an "as applied" constitutional challenge to Title VIII of ANILCA.[9] Defendants' motion to dismiss the corporate plaintiff ACLDCF as to all counts was granted with leave to amend.[10]

Plaintiffs were to then file a motion to amend their complaint on or before September 30, 2002. In their amendment, plaintiffs were to address both the question of whether ACLDCF had standing and which administrative actions would be the focus of this case. Plaintiffs filed a motion to amend,[11] which defendants opposed. Plaintiffs' proposed amended complaint also set forth four counts: 1) violations of the Fifth and Fourteenth Amendment, 2) a violation of the APA, 3) a violation of the Public Trust Doctrine, and 4) claims specific to the ACLDCF.

The court determined that plaintiffs' proposed amended complaint could not be filed because of a multitude of problems.[12]

---

[7] Order re Motion to Dismiss (Feb. 4, 2002) at 16, Clerk's Docket No. 32.

[8] Id. at 13.

[9] Id. at 16.

[10] Id.

[11] Clerk's Docket No. 47.

[12] Order re Motion to Accept Amended Complaint (March 4, 2003) at 12, Clerk's Docket No. 53.

- 4 -



EXHIBIT 1
Page 4 of 20

The court ordered plaintiffs to file a revised complaint and provided plaintiffs with fairly specific instructions on how to redraft their complaint. As to Count One, any allegations concerning a violation of the Fourteenth Amendment were to be deleted since plaintiffs conceded that they only could assert that the ANILCA regulations as applied violated the Fifth Amendment.[13] As to Count Two, the court reminded plaintiffs that the APA was the vehicle for bringing the substance of plaintiffs' Count One before the court and advised plaintiffs to combine their Counts One and Two.[14] The court ordered plaintiffs to delete Count Three.[15] As to Count Four, plaintiffs were ordered to set forth ACLDCF's standing allegations not as a separate claim but with the rest of plaintiffs' standing allegations at the beginning of the complaint.[16] In short, the court ordered plaintiffs to revise their complaint "to state plainly and concisely how and why particular regulations of the defendants are unlawful as applied."[17]

Plaintiffs' second amended complaint sets forth two counts: 1) The Regulations of ANILCA Unconstitutionally Discriminates [sic] - Violations of the Fifth Amendment and 2) Challenges

---

[13] Id. at 5.

[14] Id. at 6.

[15] Id. at 9.

[16] Id. at 10.

[17] Id. at 12.

- 5 -

EXHIBIT 1
Page 5 of 20

to Specific Acts of Defendants Pursuant to the A.P.A.[18] In Count One, plaintiffs allege that the manner in which ANILCA has been applied to plaintiffs violates their right to equal protection under the Fifth Amendment. Plaintiffs allege that defendants are applying ANILCA in a manner that treats urban residents and non-residents differently than rural residents for no legitimate reason. Specifically, plaintiffs allege that each of the individual plaintiffs (with the exception of Warren Olson) applied for and were awarded a sheep-hunting permit in Game Management Unit (GMU) 23 by the State of Alaska for the 1998 hunting season. Plaintiffs further allege that these permits were then rendered void by the FSB after the FSB determined that the sheep population in GMU 23 was insufficient to support both a subsistence and a non-subsistence hunt. Because the non-subsistence hunt was to take place on both federal and state lands, the State of Alaska cancelled the non-subsistence hunt. Plaintiffs allege that they were denied the right to participate in the 1998 sheep hunt solely because they were not rural residents of GMU 23. In Count One, plaintiffs also allege very generally that urban residents are being denied the right to fish on federal public lands in Alaska solely because of their residency.

In Count Two, plaintiffs allege that the FSB has acted in excess of its jurisdiction, acted contrary to law, and has made decisions that are arbitrary and capricious. Plaintiffs seek

---

[18] Second Amended Complaint for Declaratory Judgment and Injunctive Relief, Clerk's Docket No. 57.

- 6 -

EXHIBIT 1
Page 6 of 20

judicial review of the following specific actions by defendants:

1. The FSB failed to quantify customary and traditional use as required by a December 2, 1994 memorandum.

2. On February 3, 1995, the Southcentral Regional Advisory Council adopted "Alternative A" as a policy for each species of customary and traditional use without requiring long term use or a majority use by population and failed to submit its adoption of "Alternative A" to the FSB.

3. At a February 13, 1995 meeting, the FSB failed to adopt any policy for making C&T determinations.

4. In February of 1995, the FSB improperly accepted the Council of Chair's decision to abandon or change the eight characteristics for C&T determinations.

5. In August of 1995, the FSB published a new policy of review for C&T determinations without reference to the Regional Advisory Councils.

6. The FSB's process for making C&T determinations is arbitrary and capricious.

7. The FSB has treated ANILCA as Indian legislation, which it is not.

8. The FSB's policy of giving Regional Advisory Council recommendations the benefit of the doubt contradicts the legal requirement that C&T determinations must be supported by substantial evidence.

9. The FSB allows its chairman to vote in spite of published operating procedures that provide that the chairman cannot vote.

10. The FSB has failed to keep a complete record of its proceedings.

11. The Southcentral Regional Advisory Council improperly denied membership on the Council to any non-rural resident in 1999.

12. The FSB's decisions to declare Soldotna rural, urban, and then rural again were not supported by substantial evidence and were arbitrary and capricious.

13. The FSB's decision that it had control over navigable waters abutting federal lands is clearly erroneous.

14. The regulations as applied do not regulate the use of the resource as intended; rather, the regulations classify users.

15. The regulations create an unconstitutional preference between users.

16. The FSB has improperly denied plaintiffs their administrative right to appeal or failed to inform plaintiffs that they had a right to an administrative appeal.[19]

Defendants now move for partial judgment on the pleadings, seeking to dismiss the following portions of plaintiffs' second amended complaint:

1. all claims by plaintiff Warren Olson for denial of a subsistence hunting permit within the Wrangell-St. Elias National Park and Preserve,

---

[19] Second Amended Complaint at 14-17, ¶¶ 35-52, Clerk's Docket No. 57. Most of these alleged "illegal" actions are the same as or similar to those raised by the plaintiffs in Safari Club. Numbers 12-16 are unique to this litigation.

2. any claim challenging regulations promulgated on May 28, 1992,

3. any claim for an alleged violation of the Constitution of the State of Alaska,

4. any claim for the alleged adoption of policies by the Southcentral Regional Advisory Council with respect to C&T determinations, and

5. any claim regarding the alleged policy of the Southcentral Regional Advisory Council denying membership to anyone on that Council.

### Discussion

"A judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996).

### Plaintiff Olson's Claims

Plaintiff Olson generally alleges that he "hold[s] hunting and fishing licenses from the State of Alaska permitting [him] to hunt and fish on all lands and waters [of] Alaska open to hunting and fishing."[20] In particular, Olson alleges that he

> has been denied [a subsistence] hunting ... permit [for] the Wrangell St. Elias Park area, and as a result of the implementing regulations of Title VIII of ANILCA, can no longer participate in subsistence harvesting of renewable

---

[20] Second Amended Complaint at 5, ¶ 11, Clerk's Docket No. 57.

- 9 -


EXHIBIT 1
Page 9 of 20

resources in the State of Alaska on Federal lands.[21]

Olson further alleges that

> [p]rior to the establishment of ANILCA, [he] had harvested sheep from the Wrangell Mountains for food for his family. Upon passage of ANILCA the area became federal subsistence lands and Plaintiff Olson was then excluded from hunting sheep in that area because he was not a local resident.[22]

In short, Olson alleges that he has been deprived a right to subsistence hunt in the Wrangell-St. Elias Park and Preserve because of defendants' application of Title VIII of ANILCA. Defendants argue that Olson lacks standing to bring such a claim.

The irreducible constitutional minimum of standing contains three elements: 1) an injury in fact 2) which is fairly traceable to the defendant's alleged unlawful conduct, and 3) which is likely to be redressed by the relief requested. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Defendants argue that the third element is lacking as to plaintiff Olson's claims. Defendants contend that even if the court were to decide that defendants' implementation of Title VIII was unlawful, Olson could not obtain the relief he has requested, a right to subsistence hunt in the Wrangell-St. Elias Park and Preserve, because Title II of ANILCA precludes Olson from subsistence hunting in the Wrangell-St. Elias Park and Preserve.

---

21   Id. at ¶ 10.

22   Id. at 12, ¶ 29.

The Wrangell-St. Elias National Park and Preserve was established by section 201(9) of ANILCA. 16 U.S.C. § 410hh(9). The Park and Preserve portions are different, with the Park portion consisting of some 8,147,000 acres and the Preserve portion some 4,171,000 acres. Section 201 of ANILCA provides that "[s]ubsistence uses by local residents shall be permitted in the park, where such uses are traditional, in accordance with the provisions of subchapter II of chapter 51 of this title." Id. Section 203 of ANILCA provides that "[s]ubsistence uses by local residents shall be allowed in national preserves...." 16 U.S.C. § 410hh-2. Thus, ANILCA limits subsistence hunting in the Park and Preserve in two respects: to local residents and for subsistence uses.

In 1981, the National Park Service promulgated regulations regarding subsistence uses in national parks and preserves. These regulations have remained unchanged since their promulgation. Under the regulations, subsistence uses by local rural residents are allowed in "national preserves" and "[w]here such uses are traditional ... in ... Wrangell-St. Elias National Park...." 36 C.F.R. § 13.41. "Local rural residents" are defined as 1) any person who has his primary permanent residence within a park's "resident zone", and 2) any person to whom a subsistence permit could be issued pursuant to 36 C.F.R. § 13.44. 36 C.F.R. § 13.42(a)(1). A "resident zone" is "the area within, and the communities and areas near, a national park or monument in which persons who have customarily and traditionally engaged in subsistence uses within the national park or monument permanently reside."

<u>Id.</u> at § 13.42(b). The Wrangell-St. Elias National Park has a number of communities within its "resident zone", <u>see</u> 36 C.F.R. § 13.73(a)(1), but Anchorage, where plaintiff Olson lives, is not one of them. Section 13.44 of the Park Service regulations allows <u>rural</u> residents who do not live within the resident zone to apply for a subsistence permit to hunt within a national park or monument, but only <u>rural</u> residents qualify for these permits. The regulations do not define "rural" but under no plausible definition of "rural" could Olson, who lives in Anchorage, be considered a "rural" resident.

Thus, even if the court were to find defendants' implementation of Title VIII improper, any relief that it could grant would not remedy Olson's injury. Olson would still not be permitted to <u>subsistence</u> hunt in the Wrangell-St. Elias Park and Preserve.[23] Because Olson has not challenged Title II of ANILCA or the 1981 regulations (nor could he because such a challenge would be barred by the statute of limitations), his alleged injury would not likely be addressed by the relief which he seeks concerning defendants' implementation of Title VIII of ANILCA.

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs assert that the issue here is whether or not the Park Service interprets its regulations as adopting a "native" preference

---

[23] Olson is not precluded from <u>non-subsistence</u> hunting in the Wrangell-St. Elias area. Under state hunting regulations, Alaska residents (regardless of residency) and non-residents may hunt sheep in GMUs 11 and 12 (portions of which are in the Wrangell-St. Elias Preserve).

EXHIBIT 1
Page 12 of 20

or a "rural" preference and whether either of those interpretations are contrary to law. Plaintiffs argue that this "issue" can only be resolved after discovery and insist that Olson will have a cause of action if he has been denied hunting access to the Wrangell-St. Elias Park and Preserve because he is a not an Alaska Native.

Plaintiffs are essentially arguing that Olson could have a cause of action based upon an unconstitutional application of the Park Service regulations. The problem with this argument is that Olson has not (and based on his admitted Anchorage residence could not) plead a cause of action based on Title II for denial of a subsistence hunting permit in the Wrangell-St. Elias Park and Preserve. Quite apart from how any regulations are being applied, Title II of ANILCA bars subsistence hunting in the Park and Preserve by individuals who are not local residents. Olson did not plead that he is a local resident of the Wrangell-St. Elias Park or Preserve. In plaintiffs' second amended complaint, Olson only challenges the implementation of Title VIII and any relief the court could grant would only relate to defendants' implementation of Title VIII. Olson lacks standing to bring a claim based on the denial of a subsistence hunting permit within the Wrangell-St. Elias National Park and Preserve, and any such claim is dismissed.

### Claims based on May 28, 1992 regulations

In paragraph 22 of their second amended complaint, plaintiffs allege that

> [f]ederal regulations concerning hunting on federal land in Alaska, effective May 28, 1992, 57 [FR] 22530-567, and federal regulations

- 13 -

EXHIBIT 1
Page 13 of 20

> concerning fishing on federal land in Alaska, effective October 1, 1999, 36 CFR part 242 and 56 CFR part 100, contain prohibitions against hunting and fishing by "urban" classified residents, which have and will deny Plaintiffs the right to hunt and fish on federal lands and waters in Alaska in the future.[24]

These are the only specific regulations referred to by plaintiffs in their second amended complaint.

Defendants contend that any claims based on the May 28, 1992 hunting regulations referred to in paragraph 22 are moot. Mootness is a jurisdictional issue "deriving from the requirement of a case or controversy under Article III." Cole v. Oroville Union High School Dist., 228 F.3d 1092, 1098 (9th Cir. 2000). Federal courts lack jurisdiction to decide moot cases. Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166, 1173 (9th Cir. 2002). "An actual controversy must exist at all stages of the litigation." Id. "Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy." Alaska Center for the Env't v. U.S. Forest Serv., 189 F.3d 851, 854 (9th Cir. 1999). "A controversy remains live so long as effective relief is still available." Forest Guardians v. U.S. Forest Service, 329 F.3d 1089, 1094 (9th Cir. 2003).

The regulations promulgated on May 28, 1992 were the Subpart D regulations for the 1992-1993 hunting season. Subpart D regulations are the regulations that establish the annual season and

---

[24] Second Amended Complaint at 8, ¶ 21, Clerk's Docket No. 57.

bag limits for each hunting season.[25]  Subpart D regulations are subject to annual review and change by the FSB, which means that new Subpart D regulations are promulgated for each hunting season. There were new Subpart D regulations for the 1993-1994 hunting season and every season thereafter.  The Subpart D regulations in effect when plaintiffs filed this lawsuit were promulgated on July 1, 1999.  The Subpart D regulations that were in effect when the individual plaintiffs' 1998 hunting permits were voided went into effect on July 1, 1998.  Defendants therefore argue that any claim challenging the 1992 regulations would be moot because those regulations expired long before plaintiffs even filed this action.

Plaintiffs argue that the "capable of repetition but evading review" exception to the doctrine of mootness applies here. This exception "applies only when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Cole, 228 F.3d at 1098.  Plaintiffs argue that it would be impossible to litigate the denial of a hunting right within a one-year time frame.  Plaintiffs also argue that it is reasonable to expect that the same issue will arise every year because the hunting regulations do not change much from year to year, which results in someone being denied a right to hunt every year.

---

[25] The current Subpart D regulations are found at 50 C.F.R. § 100.26.

The "capable of repetition but evading review" exception does not apply here. This exception "'will not revive a dispute which became moot before the action commenced.'" <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 191 (2000) (quoting <u>Renne v. Geary</u>, 501 U.S. 312, 320 (1991)). The 1992 regulations had already expired when plaintiffs filed their complaint. In fact, the 1992 regulations had already expired when the individual plaintiffs' 1998 hunting permits were voided (the alleged injury which forms the basis for plaintiffs' standing to bring their "as applied" claim). Any claim based on the 1992 hunting regulations is moot and is dismissed.

<u>Claims based on alleged violation of the Alaska Constitution</u>

In paragraph 3 of plaintiffs' second amended complaint, plaintiffs allege that:

> The implementation of "rural" and "urban" community classifications and regulations pursuant to ... ANILCA for preference of subsistence hunting and fishing is completely arbitrary, adversely affects the Plaintiffs who reside in areas classified as "urban", by denying them equal protection of the laws, and <u>is contrary to the State of Alaska's Constitution</u> and the United States Constitution.[26]

Defendants argue that any claim that the implementation of ANILCA violates the Alaska State Constitution must be dismissed for failure to state a claim upon which relief can be granted because of the supremacy of federal law. Although plaintiffs concede that "there is no federal cause of action based on violations [of] the Alaska

---

[26] Second Amended Complaint at 2, ¶ 3, Clerk's Docket No. 57 (emphasis added).

- 16 -

EXHIBIT 1
Page 16 of 20

Constitution,"[27] plaintiffs contend that the Alaska Constitution somehow confers individual standing to each Alaska citizen to protect his or her access to Alaska fish and wildlife.

Plaintiffs' argument that the Alaska Constitution somehow gives individuals standing is irrelevant to the question of whether plaintiffs can assert a claim that defendants' implementation of ANILCA violates the Alaska Constitution. ANILCA and regulations properly promulgated by the Secretaries pursuant to ANILCA are the supreme law of the land. See e.g., Testa v. Katt, 330 U.S. 386, 391 (1947). Plaintiffs have conceded that they cannot plead an equal protection claim based on the Alaska Constitution. To the extent that plaintiffs have pleaded such a claim, it is dismissed.

### Claims involving Actions by the Southcentral Regional Advisory Council

Defendants contend that the portion of plaintiffs' Count Two in which plaintiffs challenge actions by the Southcentral Regional Advisory Council must be dismissed for lack of jurisdiction. Under the APA, the court's jurisdiction is limited to the review of final agency action. 5 U.S.C. § 704. "To be final for purposes of judicial review, the action must mark the 'consummation' of the agency's decision-making process, and must 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" Center for Biological Diversity v. Veneman, 335 F.3d 849, 853 (9th Cir. 2003) (quoting Alaska Dep't of

---

[27] Opposition to Motion for Partial Summary Judgment at 8, Clerk's Docket No. 71.

Envtl. Conservation v. EPA, 244 F.3d 748, 750 (9th Cir. 2001)).

In paragraph 38 of plaintiffs' second amended complaint, plaintiffs challenge the "[a]doption by Southcentral Regional [C]ouncil of Alternative A as a policy for each species for customary and traditional use without requiring long term use or a majority use by population and failure to submit such action to [the] Subsistence Board."[28] Defendants contend this action by the Southcentral Regional Advisory Council was not a final agency action because Councils only have the authority to review and evaluate proposals for C&T determinations and make recommendations to the FSB, see 16 U.S.C. § 3115(a)(3), and are not the entity that actually makes C&T determinations. Defendants contend that the FSB has expressly been delegated the authority to make C&T determinations and to issue any regulations necessary to implement C&T determinations. See 50 C.F.R. §§ 100.16 and 100.10(4)(i). Because all the Regional Advisory Councils do is make recommendations, any action by a Council, according to defendants, cannot be subject to judicial review because it is not final agency action.

In response, plaintiffs do not argue that an action by a Regional Advisory Council is a final agency action. Instead, plaintiffs argue that a similar issue has arisen from the actions of the FSB with regard to its adoption of Council recommendations because the FSB is simply rubber-stamping Council recommendations. Whether the FSB has rubber-stamped Council recommendations is

---

[28] Second Amended Complaint at 14, ¶ 38, Clerk's Docket No. 57.

- 18 -

EXHIBIT 1
Page 18 of 20

irrelevant to the question of whether a decision by a Council can be considered final agency action. Plaintiffs have not pleaded that the FSB rubber-stamped Regional Advisory Council recommendations. They have pleaded that the Southcentral Regional Advisory Council improperly adopted a C&T determination review policy, which is not a final agency action subject to judicial review. This portion of Count Two of plaintiffs' second amended complaint is dismissed.

In paragraph 47 of plaintiffs' second amended complaint, plaintiffs allege that "[t]he decision of the Southcentral Council to deny membership to the Advisory [Council] of any non-rural resident of the Anchorage, Matanuska, Sustina [sic] area in March of 1999 improperly skewed the membership of the council and is arbitrary and capricious."[29]

This portion of Count Two also must be dismissed because it is not final agency action. The Regional Advisory Councils do not appoint their own members. The Secretaries of the Interior and Agriculture appoint Council members based on recommendations from the FSB. See 50 C.F.R. § 100.11(b)(1).

## Conclusion

Based on the foregoing, defendants' motion for partial judgment on the pleadings is granted and the following portions of plaintiffs' second amended complaint are dismissed:

1. all claims by Warren Olson for denial of a subsistence

---

[29] Second Amended Complaint at 15 ¶ 47, Clerk's Docket No. 57.

hunting permit within the Wrangell-St. Elias National Park and Preserve,

2. all claims challenging the regulations promulgated on May 28, 1992,

3. all claims for an alleged violation of the Constitution of the State of Alaska,

4. all claims for the alleged adoption of policies by the Southcentral Regional Advisory Council with respect to C&T determinations, and

5. all claims regarding the alleged policy of the Southcentral Regional Advisory Council that denied urban residents membership on the Council.

DATED at Anchorage, Alaska, this **23** day of October, 2003.

/s/ H. Russel Holland
H. Russel Holland, Judge
District of Alaska

---

A00-0167--CV (HRH)
--------------------------------------------------
R. ERWIN
C. DANIEL
D. DUNSMORE (AUSA)

A98-0414--CV (HRH)
--------------------------------------------------
B. COLE
H. KENDALL-MILLER
D. DUNSMORE (AUSA)
E. JOHNSON

EXHIBIT 1
Page 20 of 20

MAILED ON 10/23/03
BY ag