DAVID W. MÁRQUEZ
ATTORNEY GENERAL
Joanne M. Grace
Assistant Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5235
Facsimile: (907)278-4607
Email: joanne_grace@law.state.ak.us
Attorney for the State of Alaska

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| LINCOL PERATROVICH, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants,<br><br> and<br><br>STATE OF ALASKA,<br><br>    Intervenor-Defendant. | No. A92-734-CV (HRH)<br><br>**State's Reply In Support of Motion for Judgment on the Pleadings** |

  The State of Alaska files this reply in support of the federal defendants' Motion for Judgment on the Pleadings. (Docket Entry No. 152).

  In their motion, the federal defendants argued that, should the Court deny the plaintiffs' request to file a second amended complaint, the Court should dismiss the first

amended complaint because it is moot and because it fails to state a claim upon which relief can be granted.

In response, the plaintiffs have made four arguments: (1) that judgment on the pleadings would be inappropriate because they adequately pled their complaint, (Docket No. 167 at 2-3); (2) that their claims extend to the current regulations and therefore are not moot, *id.* at 7-8; (3) that this Court has authority to declare that the United States has title to the Tongass submerged lands despite the U.S. Supreme Court decree in the quiet title action addressing the same lands, *id.* at 9-18; and (4) that the Ninth Circuit decision in *Alaska v. Babbitt*, 72 F.3d 698, 704 (9th Cir. 1995), did not dispose of the other arguments they have raised about federal subsistence jurisdiction in these waters, *id.* at 18-20.

The federal defendants filed a reply, responding to the plaintiffs' arguments. (Docket No. 171). In response to the plaintiffs' argument that a motion for judgment on the pleadings would be inappropriate because their complaint is adequately pled, the federal defendants argued that regardless of whether the complaint is adequately pled, they are entitled to judgment as a matter of law. *Id.* at 4. The state agrees with their position on this issue and will not repeat it.

Replying to the plaintiffs' argument on mootness, the federal defendants explained that the Court cannot grant the relief that the plaintiffs request, since the 1992 regulations have been superseded and any injunction requiring the United States to amend them would have no practical effect. *Id.* at 5-10; *see* First Amended Complaint, ¶¶ 29, 56 and

paragraph following ¶ 63.  The state agrees with the federal defendants' conclusion that the case is moot and will not repeat the arguments supporting it.

The federal defendants also have replied to the plaintiffs' arguments that title to the Tongass submerged lands remains undetermined and that their other claims are not precluded by the *Babbitt* case.  The state also agrees with those arguments and will elaborate on only a few points.

### A.  *Alaska v. United States* quieted title to the lands beneath the marine waters in the Tongass National Forest subject to the reservations creating and expanding the forest.

Contrary to the plaintiffs' view, the legal effect of *Alaska v. United States*, __ U.S. __, 125 S.Ct. 2137 (2005), was to quiet title to the Tongass submerged lands in the State of Alaska.  By confirming the United States' disclaimer, the Supreme Court has settled title to the lands underlying the marine waters within the boundaries of the Tongass National Forest as between the state and the United States, based on the orders reserving the forest.  *Alaska v. United States*, __ U.S. __, 126 S.Ct. 1014 (2006).

The plaintiffs claim that the sole effect of a Quiet Title Act disclaimer of interest is to deprive the court of jurisdiction.  Therefore, they allege, *Alaska v. United States* did not resolve the issue of whether the United States retained title to the Tongass submerged lands when Alaska joined the Union, and title remains undecided.  *See* Plaintiffs' Opposition at 13-14.  The plaintiffs suggest that, in order to get a binding judgment, the state should "have elected to oppose the disclaimer of title, and received the benefit of a

ruling on the merits by the Supreme Court." *Id.* at 14.  According to the plaintiffs, the state elected to accept the United States' disclaimer of interest "at its peril." *Id.*

The plaintiffs' interesting view of the Quiet Title Act is contrary to both the language and intent of the Act.  Under the language on the Act, a claimant in a quiet title action cannot decided to reject a disclaimer just to "receive the benefit of a ruling on the merits." *Id.*  The Act does not mention that the claimant has any input into the court's confirmation of the disclaimer; it provides simply that "[i]f the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease * * *." 28 U.S.C. § 2409a(e).  While courts are divided on whether confirmation is merely "a formality" or requires a court determination that the disclaimer is made in good faith,[1] no court has ever held that the claimant can require the court to reject the disclaimer and review the merits of the title claim.

And a claimant would have no reason to oppose a disclaimer of interest, absent bad faith by the United States.  By making the disclaimer in *Alaska v. United States*, the United States conceded that the state had title to the lands it claimed in the complaint.  This accomplished the state's goal in bringing the title claim.

---

[1] *Compare Madan v. United States,* 850 F.Supp. 148, 151 (N.D.N.Y.1994) (noting that confirmation was a formality), *with Lee v. United States,* 629 F.Supp. 721, 726 (D.Alaska 1985) (concluding that disclaimer was valid and made in good faith because conveyance of property prior to filing of plaintiffs' complaint was required by statute).

The disclaimer, confirmed by the Supreme Court, also effectuated the purpose of the Quiet Title Act — to permit a person to quiet title to lands in which the United States claims an interest. H.R. Rep. No. 92-1559, 92nd Cong, 2nd Sess. *reprinted in* 1972 U.S.C.C.A.N. 4547. The plaintiffs' interpretation of the Act would defeat its purpose. Under the plaintiffs' view of the Quiet Title Act, a claimant could never get title definitively quieted if the United States, after examining the relevant evidence and deciding that it had no title, disclaimed interest, only to change its position or have a third party raise the issue after the court lost jurisdiction. A court's confirmation of the disclaimer, incorporated into the decree, prevents this inconclusiveness.[2]

---

[2] A leading treatise on land titles explains that a confirmation of title by decree of court serves to quiet title:

> In addition to judgments and decrees which serve as foundations for official conveyances, and decrees that amount to conveyances, there are many decrees that do not form the basis of title, but that either place title of record or cure defects in the record title. Without these decrees title would not be a matter of record or marketable. Decrees of this class are the results of actions to reform instruments and actions to try title. The plaintiff can recover solely on the strength of his or her own title, not merely because of weaknesses in the defendant's title. The function of the decree is not to confer title, but merely to confirm the pre-existing title, and to bar *of record* adverse claims previously barred *in pais*. Decrees in these actions serve to clear the records from clouds on the title, and to furnish record evidence of titles that would otherwise rest entirely *in pais*, such as title based on: (1) adverse possession, (2) oral gift, (3) estoppel, (4) a completed purchase in which no deed was given, and on (5) deeds that were lost or destroyed without having been recorded, or that lacked prerequisites to entitle them to be recorded. Court decrees also can reform or construe original records which were invalid by reason of inherent defects or uncertain as to parties, property, or terms.

3 Patton and Palomar on Land Titles §538 (3d ed)(footnotes omitted).

*State's Reply in Support of Motion for Judgment on the Pleadings*

In *Alaska,* the United States initially took the position that it held title to the Tongass submerged lands. *See* Memorandum for the United States in Response to Alaska's Motion for Summary Judgment on Count III of the Amended Complaint, *Alaska v. United States,* Original No. 128, attached as Exhibit 1, at 2 (also available at http://docs.law.gwu.edu/facweb/gmaggs/128orig/docket.htm). After the State filed a motion for summary judgment with the special master, however, the United States reevaluated its claim and determined that it did not have title. *Id.* at 3, 4.

At this point, there was no longer any dispute about title to these lands to resolve in the case. The United States disclaimed interest, the Court confirmed the disclaimer, and this became part of the Court's decree. *Alaska*, __ U.S. __, 126 S.Ct. 1014, 1015. Even if the state had "elected" to oppose the disclaimer, the Court would have confirmed it. The evidence that Congress did not intend to retain title to the marine submerged lands based on the forest reservations was exceedingly strong. The United States gave the evidence serious consideration; it reported to the special master that "[i]n assessing whether to contest Alaska's claim of title, the United States must make a legal judgment, on behalf of all its citizens, based on a faithful and fair-minded analysis of congressional intent," and that "[i]n the view of the United States, it could not enter into a binding admission respecting millions of acres of submerged lands within the Tongass National Forest without first discovering, researching, and analyzing Alaska's specific claims." Memorandum for the United States, exhibit 1, at 2 n.2, 5. Once the parties agreed on

title, the dispute was eliminated. Given these circumstances, the Supreme Court had no reason to rule on the merits, as the plaintiffs suggest. *See* Plaintiffs' Opposition at 14.

The Court arguably would not even have had Article III jurisdiction to rule on the merits, with or without the Quiet Title Act provision providing that a confirmed disclaimer deprives it of jurisdiction. When the United States changed its position and agreed that Congress did not intend to retain the Tongass submerged lands at statehood, the lawsuit no longer presented a case or controversy as to that issue. The disclaimer completely disposed of the state's title claim.

The plaintiffs also argue that because the confirmation did not "convey" title to the land, the Supreme Court confirmation does not preclude the relief that they seek from this Court – a declaration that the United States has title to the submerged lands. "No change in title occurred, nor could it have occurred, as a result of that acceptance." *Id.* at 15. The state agrees with that assessment, but fact that the Court confirmed the disclaimer rather than transferring title is irrelevant to the result. *See supra, note 1*. The Court would have no reason to "convey" property to the state when both the state and the United States agree that the United States does not have title. The confirmation gives the state all the relief it sought and all the relief it could ever get - a decree confirming that the United States does not have title to the lands. A quiet title action against the United States only determines whether or not the United States has a property interest; it would not ever require the Court to "convey" federal property.

The plaintiffs argue also that *Alaska v. United States* did not quiet title to all submerged lands within the boundaries of the Tongass National Forest. Plaintiffs' Opposition at 16. This is correct, but they based their subsistence claim in this case only on the forest reservation, in particular the area covered by the February 16, 1909 order that expanded the existing forest. *See* First Amended Complaint, ¶¶ 17-19. *Alaska v. United States* established that the United States did not retain title at statehood to submerged lands by virtue of their inclusion within the forest boundaries established in the 1902, 1907, 1909, and 1925 presidential proclamations. *See Alaska*, __ U.S. __, 126 S.Ct. at 1016 (paragraph 3(e) of the disclaimer). The plaintiffs have not alleged that they applied for permits in areas covered by other reservations not subject to the *Alaska v. United States* quiet title action.

The state did not seek to quiet title to all submerged lands in Southeast Alaska in the Supreme Court case because far too many prestatehood withdrawals exist in that area to resolve in a single lawsuit, and the state may not even claim title to the submerged lands within some of them. While the forest boundaries encompass nearly all of Southeast Alaska, many reservations are superimposed on the forest reservation for other purposes, including lighthouses, wildlife protection, and military use. Again, however, the plaintiffs have not alleged that the United States retained title at statehood to submerged lands based on these reservations or that they applied for permits for the areas within them.

### B.  The Ninth Circuit *Babbitt* case disposes of the plaintiffs' Commerce Clause claim.

The plaintiffs also argue that *Babbitt* did not dispose of their claim that the federal subsistence authority applies to all navigable waters in Alaska, to the extent of Congress' commerce clause authority.  The Ninth Circuit explicitly rejected this claim, mentioning the plaintiffs by name.  It stated that "[t]he Peratrovich Plaintiffs [argue that all navigable waters are public lands] because in ANILCA, Congress expressed its intent to exercise its Commerce Clause powers to regulate fishing in navigable waters." 72 F.3d at 702.  The court then stated that "[w]e reject the argument that Congress expressed its intent to exercise its Commerce Clause powers to regulate subsistence fishing in all Alaskan navigable waters."  *Id.* at 703.  The en banc panel did not overrule this decision; to the contrary, it held that "[a] majority of the en banc court has determined that the judgment rendered by the prior panel, and adopted by the district court, should not be disturbed or altered by the en banc court."  *John v. United States*, 247 F.3d 1032, 1033 (9th Cir. 2001).  The Ninth Circuit's rejection of the Commerce Clause claim, therefore, stands as good law and is binding on this Court.

### C.  If the Court grants the federal defendants' motion for judgment on the pleadings, the state requests that the Court also dismiss its counterclaim.

In its Answer to First Amended Complaint, the state included a counterclaim. (Docket No. 107).  The state sought a declaratory judgment that the plaintiffs do not have a right to federal regulation of subsistence harvesting of herring roe on kelp in the marine waters within the Tongass based on federal ownership of the underlying lands.  *Id.*

The state believes that the decree in *Alaska v. United States* makes this counterclaim moot. If this Court agrees that the *Alaska* decree settles the title issue in this case and grants judgment on the pleadings as to the plaintiff's title-based cause of action, then the state requests that the Court dismiss the counterclaim as well.

DATED March 28, 2006.

                                   DAVID W. MÁRQUEZ
                                   ATTORNEY GENERAL

By:   /s/ Joanne M. Grace
        Joanne M. Grace
        Assistant Attorney General
        1031 W. 4th Ave., Suite 200
        Anchorage, Alaska 99501
        Telephone: (907) 269-5235
        Facsimile: (907)278-4607
        Email: joanne_grace@law.state.ak.us

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 28, 2006,
a copy of the foregoing was served electronically to:

  Randolph H. Barnhouse
  Dean K. Dunsmore
  Heather Kendall Miller
  Robert Anderson
  William F. Sherman

and by United States mail, first class, postage paid, to the following:

  William P. Horn
  Carol H. Daniel
  Gregory L. Fisher

/s/ Joanne M. Grace