did not "necessarily embrace" marine submerged lands within the Forest boundaries. But there is no occasion for the Master to reach the question whether the proclamations embraced those lands, because the United States has concluded that Congress did not clearly intend, at or before the time of Alaska's statehood, to retain marine submerged lands on the basis that they were encompassed within the Tongass National Forest at the time Alaska was admitted to the Union. The United States accordingly has determined not to claim title based solely on those proclamations.[3]

In assessing whether to contest Alaska's claim of title, the United States must make a legal judgment, on behalf of all its citizens, based on a faithful and fair-minded analysis of congressional intent. *See Intervention Rep.* 23; *see also Intervention Hearing Tr.* 54, lines 7-12. The United States has conducted that analysis and has concluded that Congress did not clearly express its intent, at or before the time of Alaska statehood, to retain title to all submerged lands within the boundaries of the Tongass National Forest merely because those lands are within the forest boundaries set out in

---

[3] If the question were properly presented for determination, the United States would challenge Alaska's various arguments respecting the scope and effect of the 1902, 1907, and 1909 presidential proclamations. For example, Alaska argues that submerged lands may never be reserved as a national forest because they are not public lands. Alaska fails to distinguish the use of the term "public lands" as it relates to disposal of submerged lands out of federal ownership from the use of "public lands" when reserving lands for a federal purpose. In the latter context, "public lands" may include submerged lands. *See, e.g., Hynes v. Grimes Packing Company*, 337 U.S. 86, 114-116 (1949). Alaska also argues that submerged lands cannot be reserved for national forest purposes because submerged lands are not forested. But the relevant statute, 16 U.S.C. 471 (repealed 1976), requires only that *portions* of the reserved area be forested; indeed, numerous forests include acreage that is above the tree line or otherwise lacking a current capability of producing timber. Alaska further contends that submerged lands may not be reserved as part of a national forest because they are unrelated to the purposes of the forests. Given the crucial role that submerged lands, and particularly tidelands, play in transporting logs from coastal forests to processing plants and markets, those lands manifestly support Congress's objective of assuring a steady supply of timber. *See* 16 U.S.C. 475. Those examples illustrate the danger of accepting Alaska's arguments respecting the scope and effect of the presidential proclamations creating the Tongass National Forest and counsel against offering an advisory opinion on the matter.

5

the 1902, 1907, and 1909 presidential proclamations. The United States accordingly acknowledges that Alaska has a valid basis for asserting title to some of the marine submerged lands within the Tongass National Forest, and the relevant question is the extent of Alaska's ownership.

> II. **The Conclusion That Congress Did Not Clearly Intend To Retain Title To Submerged Lands Merely Because They Are Within The Boundaries Of The Tongass National Forest Does Not Entitle Alaska To Summary Judgment Quieting Title To All Submerged Lands Within Those Boundaries**

The conclusion that Congress did not clearly intend to retain marine submerged lands within the Tongass National Forest based merely on their location within the forest reserve does not mean that the State is entitled to all of the marine submerged lands within the boundaries of the Tongass. As a practical matter, Congress's failure to express such an intent will result in the ultimate recognition that Alaska has title to the majority of the acreage in dispute. Nevertheless, there are significant areas of marine submerged land within the boundaries of the Tongass that do not belong to the State. Some of those lands are readily identifiable and remain incontrovertibly in federal ownership. Other lands are known to exist but have not been specifically identified.

First, the boundaries of the Tongass National Forest extend beyond the seaward boundaries of the State of Alaska. The Amended Complaint seeks to quiet title to only those marine submerged lands that are within Alaska. Indeed, Alaska generally can make no claim to ownership of those lands and correspondingly lacks jurisdiction or standing to dispute the United States' title. *See* 43 U.S.C. 1301(b).

Second, there are, within the boundaries of the Tongass National Forest, numerous withdrawals and reservations under the jurisdiction of agencies other than the Department of Agriculture's Forest Service. The Quiet Title Act requires a State to give 180 days' written notice

of intent to sue to the head of the federal agency with jurisdiction over the land. 28 U.S.C. 2409a(m). Alaska gave written notice only to the Secretary of Agriculture with regard to lands within the exterior boundaries of the Tongass. *See* Brief for the United States on Motion for Leave to File a Bill of Complaint 17-20. During the proceedings on Alaska's motion for leave to file a complaint in this action, Alaska agreed that the scope of this action did not include marine submerged lands that, although within the boundaries of the Tongass National Forest, were subject to a withdrawal placing the land under the jurisdiction of any agency other than the Forest Service. *Id.* 20. The 1958 Atlas of Federal Withdrawals and Reservations shows numerous non-Forest Service withdrawals within the area of the Tongass. US-III-1.[4]

Third, the Submerged Lands Act itself excepts from the confirmation and establishment of States' title:

> (a) all tracts or parcels of land together with all accretions thereto, resources therein, or improvements thereon, title to which has been lawfully and expressly acquired by the United States from any State or from any person in whom title had vested under the law of the State or of the United States, and all lands which the United States lawfully holds under the law of the State; all lands expressly retained by or ceded to the United States when the State entered the Union (otherwise than by a general retention or cession of lands underlying the marginal sea); all lands acquired by the United States by eminent domain proceedings, purchase, cession, gift or otherwise in a proprietary capacity; all lands filled in, built up, or otherwise reclaimed by the United States for its own use; and any rights the United States has in lands presently and actually occupied by the United States under claim of right;
>
> (b) such lands beneath navigable waters held, or any interest in which is held

---

[4] Such withdrawals include, for example, the numerous pre-statehood lighthouse reserves that embrace submerged lands. Because the United States held the lighthouse reserves for Coast Guard purposes, Section 11(b) of the Alaska Statehood Act withheld from the State those submerged lands. See *Alaska*, 521 U.S. at 42. (Section 11(b) withheld all submerged lands held for "military, naval, Air Force or Coast Guard purposes, including naval petroleum reserve numbered 4"). The lighthouse withdrawals represent only a fraction of the pre-statehood withdrawals that are outside the scope of this action. See 1958 Atlas of Federal Withdrawals. US-III-1.

    by the United States for the benefit of any tribe, band, or group of Indians or for individual Indians; and

    (c) all structures and improvements constructed by the United States in the exercise of its navigational servitude.

43 U.S.C. 1313. Alaska's amended complaint and its motion for summary judgment challenge the United States' title on the basis that the presidential proclamations establishing the Tongass did not expressly retain the submerged lands at statehood. Alaska has not challenged or addressed any of the other exceptions to the confirmation of a State's title under the Submerged Lands Act. Yet such exceptions apply to numerous locations in the Tongass.

  For example, Subsection 1313(a) excludes from confirmation to the States "all lands filled in, built up, or otherwise reclaimed by the United States for its own use." In order to transfer logs to water for shipment to processing plants or market, it is generally necessary to build a log transfer facility. Declaration of Kenneth D. Vaughan, US-III-2. Such facilities in most cases are built partially on uplands and partially on submerged lands. *Ibid.* The federal government's preliminary investigations reveal approximately 350 sites where timber harvest occurred prior to Alaska statehood. *Ibid.* The construction of a log transfer facility in some form was likely at these sites. *Ibid.* In addition to log transfer facilities, the Forest Service built docks and other facilities on tidelands. *See, e.g.,* US-III-3, US-III-4, US-III-5, US-III-6, US-III-7. The Forest Service has also acquired tidelands by purchase. US-III-9. Other agencies filled tidelands prior to Alaska's statehood. *See* US-III-8. Some sites filled by the Forest Service have subsequently been conveyed to the Department of the Army. US-III-6.

  Similarly, Subsection 1313(c) withholds from a State "all structures and improvements constructed by the United States in the exercise of its navigational servitude." Numerous such

improvements were made to some submerged lands within the exterior boundaries of the Tongass before Alaska's admission to the Union. Alaska's own exhibits show that the United States has been constructing improvements in its exercise of the navigational servitude in the Archipelago since the 1800's. *See* AK-21 through 23.

Furthermore, before Alaska's admission, the Forest Service administratively set aside significant portions of the Tongass for the protection of wildlife. US-III-10 At least some of those wildlife set-asides included marine submerged lands. US-III-11 (Naha River set aside including Roosevelt lagoon); US-III-12 (Anan Creek set aside including salt lagoon). Congress retained submerged lands in such areas in federal ownership by virtue of Section 6(e) of the Alaska Statehood Act, note prec. 48 U.S.C. note prec. 21. *Alaska*, 521 U.S. at 57.

### III. The Special Master Should Postpone Action On Alaska's Motion For Summary Judgment On Count III To Allow The Parties To Develop A Stipulation For The Master's Review That Would Allow Formulation Of A Consent Decree Resolving The Precise Extent Of Alaska's Title

The United States' acknowledgment that Congress did not clearly intend to retain title to marine submerged lands merely because they are within the boundaries of the Tongass National Forest eliminates the fundamental legal issue at stake in Count III. That acknowledgment recognizes that Alaska has a legal entitlement to marine submerged lands in the Tongass National Forest that are within the seaward limits of Alaska, provided that those submerged lands have not been retained by the United States through means other than the 1902, 1907, and 1909 proclamations. The acknowledgment leaves two remaining issues, neither of which is currently susceptible to resolution through Alaska's motion for summary judgment.

First, the United States' acknowledgment does not resolve the precise limits of Alaska's

9

entitlement. There are potentially hundreds of small parcels of submerged lands within the boundaries of the Tongass that either are beyond the jurisdiction of the Court because of Alaska's failure to serve a notice of intent to sue on any agency other than the Secretary of Agriculture, or are subject to a Submerged Lands Act exception that would prevent passage of title to the State. *See* 43 U.S.C. 1313. Although these parcels are numerous, they encompass only a small portion of the marine submerged lands that are within both the State of Alaska and the boundaries of the Tongass National Forest. Assessing the status of those parcels individually through adversarial proceedings—an exercise that would be beyond the contemplated confines of this original action—would be prohibitively time consuming and expensive.[5]

The United States submits that both the federal and state governments would benefit if they could specifically identify those parcels though a collaborative, rather than an adversarial, process. The United States accordingly proposes that the Special Master stay the proceedings on Count III to allow the United States and Alaska an opportunity to develop a stipulation that would identify and resolve the status of the relevant parcels. If the parties are able to reach agreement on that

---

[5] The United States explained in its Brief on Motion for Leave to File Complaint (at 17-21), that Alaska had failed to give the notice of intent to sue with regard to the numerous small reserves within the boundaries of the Tongass as required by 28 U.S.C. 2409a(m). The federal government observed at that time that the parcels for which no notice had been given "though generally small, are potentially numerous and varied." *Id.* at 19. It noted that, "apart from those jurisdictional concerns, considerable resources could be expended by this Court and the parties in determining the location and status of small tracts that would be more appropriately litigated— if at all—through an action in federal district court." *Ibid.* The lack of suitability of original jurisdiction is just as apparent in the case of the parcels that were filled prior to statehood or that are subject to special purpose withdrawals and set asides (*e.g.*, Forest Service game refuges and dock sites). Alaska's motion for leave to file a complaint, which challenges only the legal sufficiency of the 1902, 1907, and 1909 presidential proclamations as a source of federal retention of submerged lands within the Tongass, did not invoke the Supreme Court's original jurisdiction over the time-consuming and factually intensive adjudication of pre-statehood fill sites and other small exceptions to the Submerged Lands Act.

stipulation, it would then provide the basis for formulating a consent decree respecting Count III.

Second, the United States anticipates that the amici curiae, Franklin H. James *et al.*, may object to the United States' conclusion that Congress did not clearly intend, at or before statehood, to retain all of the marine submerged lands within the Tongass National Forest. The appropriate point for the amici curiae to articulate their objections, however, would be at the conclusion of the collaborative process that the United States envisions for reaching a stipulation respecting the federally retained parcels. If the United States and Alaska are able to reach agreement, then the amici curiae would be able to present their perspective based on the precise resolution that the United States and Alaska contend is appropriate. If the United States and Alaska are unable to reach agreement, the Special Master could convene a status conference to determine the proper mechanism for the resolution of the remaining issues.

The United States proposes to submit a formal motion for a stay of further proceedings on Count III at the conclusion of the briefing on motions for summary judgment. The United States intends to consult with Alaska and hopes to reach agreement on the time period and form of the proposed stay.

## CONCLUSION

The motion of the State of Alaska for summary judgment on Count III of the Amended Complaint should be held in abeyance in accordance with a motion for stay that shall be submitted, after consultation with Alaska, at the conclusion of the briefing on motions for summary judgment.

Respectfully submitted.

        Theodore B. Olson
        *Solicitor General*

        Edwin S. Kneedler
        *Deputy Solicitor General*

        Jeffrey P. Minear
        *Assistant to the Solicitor General*

        Gary B. Randall
        Bruce M. Landon
        Michael W. Reed
        *Trial Attorneys*

        *United States Department of Justice*
        *Washington, D.C. 20530-0001*
        *(202) 514-2217*

By:_____
    Bruce M. Landon
    *Trial Attorney, General Litigation Section*
    *Environment and Natural Resources Division*
    *United States Department of Justice*
    *801 B Street, Suite 504*
    *Anchorage, AK 99501*
    *(907) 271-5452*

November 8, 2002