IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LINCOLN PERATROVICH, et al.,    )
                                    )
                    Plaintiffs,  )
                                    )
    vs.                          )
                                    )
UNITED STATES OF AMERICA, et al.,  )
                                    )
                   Defendants.  )
                                    )
    and                        )
                                    )   No. 3:92cv0734-HRH
STATE OF ALASKA,                  )
                                    )
           Intervenor-Defendant.  )
_____)

O R D E R

Motion for Judgment on the Pleadings

       The federal defendants move for judgment on the pleadings.[1]  The intervenor, State of Alaska, joins in the motion for judgment on the pleadings.[2]  The motion is opposed.[3]  Oral argument has not been requested and is not deemed necessary.

---

    [1]    Clerk's Docket No. 152.

    [2]    Clerk's Docket No. 155.

    [3]    Clerk's Docket No. 167.

Statutory / Regulatory Background

In furtherance of commitments made by Congress in the
Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601-29h,
Congress enacted the Alaska National Interest Lands Conservation
Act (ANILCA), 16 U.S.C. §§ 3101-3233, in 1980.  Title VIII of
ANILCA made provision for the continuation of a subsistence
lifestyle on the part of rural Alaska residents.  Under ANILCA,
subsistence uses of fish and wildlife are accorded a priority over
the taking of such resources from public lands for other purposes.
16 U.S.C. § 3114.  Subsistence uses are defined in terms of "the
customary and traditional uses by rural Alaska residents of wild,
renewable resources for direct personal or family consumption," but
also for, among other things, "customary trade." 16 U.S.C. § 3113.
The term "public lands" is defined in ANILCA as being "Federal
lands" except for certain categories of land not here relevant.
16 U.S.C. § 3102(3).  "'Federal land' means lands the title to
which is in the United States," 16 U.S.C. § 3102(2), and "land" is
defined as "lands, waters, and interests therein." 16 U.S.C.
§ 3102(1).

Although it constructed a regime for the management of
federal lands to support subsistence hunting and fishing, Congress
in fact contemplated that the State of Alaska would enact and
implement a law applicable to public and state lands consistent
with Title VIII of ANILCA, and that the State would administer the
same.  16 U.S.C. § 3115(d).  The State of Alaska did enact such a
law.  The State undertook to manage state lands and public lands in

- 2 -

a fashion consistent with Title VIII of ANILCA, but the Supreme
Court of Alaska subsequently determined that the state program
contravened applicable provisions of the Constitution of the State
of Alaska. McDowell v. State, 785 P.2d 1 (Alaska 1989). It having
become clear that the State would likely not resume a program for
subsistence management of public lands consistent with ANILCA, the
Secretaries of the Interior and Agriculture were required to
implement Title VIII of ANILCA. 16 U.S.C. § 3115(a)-©. Temporary
subsistence management regulations were adopted pursuant to § 3124.
See 55 Fed. Reg. 27114 (June 29, 1990). The temporary regulations
did not expressly mention navigable waters. However, during the
public comment period for the temporary regulations, many comments
were received "on the exclusion of navigable waters from the
definition of public lands." Id. at 27115. The Secretaries
responded to these comments, stating that "[t]he United States does
not generally hold title to navigable waters and thus navigable
waters generally are not included within the definition of public
lands." Id.

        The temporary regulations were followed by a lengthy
process for the implementation of permanent federal subsistence
management regulations by the Secretaries. The proposed permanent
regulations were promulgated under two separate rule-making
processes. Proposed regulations concerning the program structure
and process were promulgated on January 30, 1992. See 57 Fed. Reg.
3676. These proposed regulations made no mention of navigable
waters. Proposed regulations "regarding seasons and bag limits,

and methods and means related to subsistence taking of fish and
wildlife" were published on December 9, 1991. 56 Fed. Reg. 64404.
In the "Supplementary Information" section of these proposed
regulations, the Secretaries explained that:

> The United States generally does not hold
> title to navigable waters and thus navigable
> waters generally are not included within the
> definition of Federal public lands for
> purposes of these regulations (see 56 FR 29312
> dated June 26, 1991). At this time, Federal
> Subsistence Fishing Regulations apply to:
> (1) Non-navigable waters on Federal public
> lands, except in Glacier Bay National Park
> where all waters are closed to subsistence
> harvest, and (2) navigable waters in those
> cases where Federal title and/or jurisdiction
> is specifically identified herein.

Id. at 64405.

The permanent regulations became final on July 1, 1992.[4]
In the preamble to the permanent regulations, the Secretaries again
explained that "the public lands definition in ANILCA and these
regulations generally excludes navigable waters." 57 Fed. Reg,
22940, 22942 (May 29, 1992). Section 100.3(b) of the permanent
regulations did provide that the regulations applied to navigable
waters located on specific, identified land. See 50 C.F.R.
§ 100.3(b) (1992). No land within the boundaries of the Tongass
National Forest was specifically identified in the 1992 version of
section 100.3(b).

---

[4]    The Secretary of the Interior's subsistence management
regulations are codified at Title 50 of the Code of Federal
Regulations, Part 100. The Secretary of Agriculture's subsistence
management regulations are codified at Title 36 of the Code of
Federal Regulations, Part 242. This order will cite only the
version of the regulations found in Title 50.

The 1992 regulations were amended in 1999. See 64 Fed. Reg. 1276 (Jan. 8, 1999) ("This rule amends the scope and applicability of the Federal Subsistence Management Program in Alaska."). Pertinent to this case, the 1999 regulations provided:

> The regulations contained in this part apply on all public lands including all non-navigable waters located on these lands, on all navigable and non-navigable water within the exterior boundaries of the following areas, and on inland waters adjacent to the exterior boundaries of the following areas:...
>
> Tongass National Forest, including Admiralty Island National Monument and Misty Fjords National Monument, and excluding marine waters[.][5]

50 C.F.R. § 100.3(b)(28) (1999) (emphasis added). Most recently, the Secretaries again "revised" their regulations to clarify "the jurisdiction of the Federal Subsistence Management Program for certain coastal areas in Alaska in order to further define, in part, certain waters that may never have been intended to fall under the Subsistence Management Program jurisdiction." 70 Fed. Reg. 76400 (Dec. 27, 2005). The revised regulations took effect on January 26, 2006. Id. However, as regards navigable waters, the most current regulations of the Secretaries provide:

> The regulations contained in this part apply on all public lands, excluding marine waters, but including all inland waters, both navigable and non-navigable, within and

---

[5] Since 1999, the regulations have defined "marine waters" as "those waters located seaward of the mean high tide line or the waters located seaward of the straight line drawn from headland to headland across the mouths of rivers or other waters as they flow into the sea." 50 C.F.R. § 100.4 The court assumes that when plaintiffs use the term "marine waters" they are employing the same definition.

adjacent to the exterior boundaries of the
following areas ... Tongass National Forest,
including Admiralty Island National Monument
and Misty Fjords National Monument[.]

50 C.F.R. § 100.3(c)(25) (2006) (emphasis added).

Finally, ANILCA contains an express judicial enforcement

provision, which provides:

Local residents and other persons and
organizations aggrieved by a failure of the
State or the Federal Government to provide for
the priority for subsistence uses set forth in
section 3114 of this title ... may, upon
exhaustion of any State or Federal (as
appropriate) administrative remedies which may
be available, file a civil action in the
United States District Court for the District
of Alaska to require such actions to be taken
as are necessary to provide for the priority.

16 U.S.C. § 3117(a).

Procedural History

On December 2, 1992, plaintiffs filed their complaint for

injunctive and declaratory relief.[6]  This complaint described the

"nature of the case" as a civil action against the federal

defendants "based on the failure of the Federal Subsistence Board

(the Board) to act lawfully and with reasonable timeliness" on

plaintiffs' application "to harvest and sell herring roe on kelp as

lawful 'customary trade'" in furtherance of the subsistence fishing

provided for by Title VIII of ANILCA.[7]  Jurisdiction was founded

upon 16 U.S.C. § 3117(a), the judicial enforcement section of

Title VIII of ANILCA, 28 U.S.C. § 1331, and 5 U.S.C. § 702.  The

---

[6]    Clerk's Docket No. 1.

[7]    Complaint for Injunctive and Declaratory Relief at 2,
¶ 1, Clerk's Docket No. 1.

- 6 -

parties to the case were described in the original complaint and remain as follows.  Plaintiffs Lincoln Peratrovich and J.K. Samuel are rural Alaska residents.  Plaintiffs Hakan Kwaan and Taanta Kwaan are bands of Tlingit Natives whose ancestral homeland is in Southeast Alaska in or around Prince of Wales Island.  The federal defendants are the United States of America, the Secretaries of the Departments of the Interior and Agriculture, the Chair of the Federal Subsistence Board, and the Board itself.

The factual underpinnings for plaintiffs' original complaint focus upon the administrative proceedings before the Board that followed plaintiffs' applications for permits to harvest and sell herring roe on kelp under the "customary trade" provisions of ANILCA.  Plaintiffs allege that their applications were filed with the Board on April 4, 1991, and that no action on their applications was taken during the 1991 herring roe season.  In September of 1991, plaintiffs communicated to the Board their view that their applications were not moot, that the 1992 season was approaching, and that they had a continuing need for federal permits from the Board.  In this letter, the plaintiffs demanded formal action by the Board in the form of a decision on their applications.  In November of 1991, the Board responded with reasons why it had not thus far acted upon the applications.[8]  In

---

[8]    The Board advised that there were ongoing federal criminal prosecutions which, in the view of the Board, made it "inappropriate" for the Board to act upon the applications.  The Board also explained that it was developing permanent federal subsistence regulations that would address the customary trade and marine waters subsistence use issue.  See Letter from Curtis McVee,
(continued...)

January of 1992, plaintiffs wrote the Board soliciting a favorable ruling on their applications prior to the 1992 herring season.  By letter of March 3, 1992, plaintiffs again inquired as to the status of their applications, and allege that they were informally advised that the Board would render a decision on the applications in time for the 1992 season.[9]  On March 10, 1992, the Board rendered a decision in which it disclaimed any federal jurisdiction under ANILCA "over the navigable waters in the area that you request authorization for herring roe harvest."[10]  This letter decision makes it clear that at the time of the decision, the Board was still acting under the then current, temporary federal subsistence regulations which were published on June 29, 1990.  The decision further indicates that proposed permanent federal subsistence regulations had been published on December 9, 1991; and that these proposed regulations took the position that "the United States generally does not hold title to navigable waters and thus navigable waters generally are not included within the definition

_____

[8](...continued)
Chair, Federal Subsistence Board, to Rudy James and J.K. Samuels at 1, Exhibit C, Complaint for Injunctive and Declaratory Relief, Clerk's Docket No. 1.

[9]      Complaint for Injunctive and Declaratory Relief at 6, ¶ 11e, Clerk's Docket No. 1.  While virtually all of the description of the administrative proceedings is admitted by the federal defendants, this and a subsequent informal inquiry are denied by the federal defendants because the persons involved for the Board have no recall of the conversations.  See Answer at 5, ¶ 11e, Clerk's Docket No. 1.

[10]     Letter from Curtis V. McVee, Chair, Federal Subsistence Board at 1, Exhibit E, Complaint for Injunctive and Declaratory Relief, Clerk's Docket No. 1.

- 8 -

of federal public lands for purposes of these regulations."[11]  The
Board declined to issue 1992 permits "under our current
regulations."[12]

In furtherance of their complaint, plaintiffs sought a
preliminary injunction requiring the federal defendants to issue to
plaintiffs the federal subsistence permits for which they had
applied.  At the time the court ruled upon plaintiffs' motion,[13] the
Secretaries had adopted regulations which, as a general
proposition, provided that "neither ANILCA nor these regulations
apply generally to subsistence uses on navigable waters."
57 Fed. Reg. 22940, 22942 (May 29, 1992).  The court further
observed that in implementing the federal subsistence program, the
Secretaries of the Interior and Agriculture created the Federal
Subsistence Board, authorizing it to administer "'the subsistence
taking and uses of fish and wildlife on public lands....'"[14]  With
the regulatory scheme in the foregoing posture, this court
concluded that the Board was without jurisdiction to adopt
regulations affecting the taking of herring roe from navigable
waters which were the subject of plaintiffs' complaint,[15] and the

---

[11]   Id. (citing 56 C.F.R. 64401, 64405, 64431, and 64441
(Dec. 9, 1991).

[12]   Id. at 1-2.

[13]   See Order re Injunctive Relief (April 16, 1993), Clerk's
Docket No. 27.

[14]   Id. at 4 (quoting Section ___.10(a), 57 Fed. Reg. 22,953).
This section of the regulation was codified at 50 C.F.R.
§ 100.10(a) (1992).

[15]   Id. at 4-5.

court therefore concluded that it was unlikely that the plaintiffs would succeed on the merits of their contention that the Board must issue permits authorizing them to take herring roe.  In so stating, the court cautioned that it was expressing "no opinion regarding a very substantial controversy between the parties as to whether the federal subsistence program should or must be extended to navigable waters within the State of Alaska."[16]

Thereafter, on June 18, 1993, the federal defendants filed their answer.[17]  After the filing of the federal defendants' answer, proceedings in this case were suspended while the court gave attention to a group of very complex, related cases focusing upon who -- as between the Secretaries of the Departments of the Interior and Agriculture on the one hand, and the Alaska Department of Fish and Game on the other hand -- were entitled to manage public (federal) lands under Title VIII of ANILCA, and what lands (which was referred to as the "where" issue) were included in "public lands" for purposes of Title VIII of ANILCA.[18]  The "where" issue included the question of whether navigable waters were public lands for purposes of ANILCA.  In an order issued March 30, 1994, the court determined that navigable waters were public lands for purposes of Title VIII of ANILCA.  <u>Katie John I</u>, No. A90-0484-CV, 1994 WL 487830, at *18  (D. Alaska  Mar. 30, 1994).

---

[16]    <u>Id.</u> at 5.

[17]    Clerk's Docket No. 28.

[18]    The lead case of the jointly managed subsistence cases was <u>John v. United States</u>, No. A90-0484-CV (<u>Katie John I</u>), and five or more other, similar cases, which included the instant case.

This case was further stayed pending an appeal in <u>Katie John I</u>.[19]  The Ninth Circuit issued an opinion on April 20, 1995, which was withdrawn on December 19, 1995.[20]  <u>Alaska v. Babbitt</u>, 72 F.3d 698 (9th Cir. 1995) (<u>Katie John III</u>).  In <u>Katie John III</u>, the court concluded that some navigable waters were public lands. <u>Id.</u> at 702.  The question was <u>which</u> navigable waters were public lands.  <u>Id.</u>  The <u>Katie John</u> plaintiffs argued that public lands included all navigable waters by virtue of the navigational servitude.  <u>Id.</u> at 702.  The court rejected this argument because the court concluded that the navigational servitude was not a property interest to which the United States held title.  <u>Id.</u> at 703.  The <u>Peratrovich</u> plaintiffs argued that all navigable waters were public lands "because, in ANILCA, Congress expressed its intent to exercise its Commerce Clause powers to regulate subsistence fishing in navigable waters." <u>Id.</u> at 702.  The court rejected this argument because it found no such congressional intent in ANILCA.  <u>Id.</u> at 703.  The federal agencies argued "that

---

[19]    <u>See</u> Order re Case Status (July 12, 1994), Clerk's Docket No. 51.

[20]    The December 19, 1995, opinion superseded an earlier opinion, <u>Alaska v. Babbitt</u>, 54 F.3d 549 (9th Cir. 1995) (<u>Katie John II</u>), which had been issued on April 20, 1995. In the withdrawn opinion, the Ninth Circuit held "that the subsistence priority applies to navigable waters in which the United States has reserved water rights." <u>Id.</u> at 551. The court rejected "the argument that the navigational servitude is an 'interest ... the title to which is in the United States,' such that all navigable waters are public lands within the meaning of ANILCA." <u>Id.</u> at 553. However, the court found that because the United States has interests in some navigable waters by virtue of the reserved water rights doctrine, "public lands subject to subsistence management under ANILCA include certain navigable waters." <u>Id.</u> at 554.

public lands include those navigable waters in which the federal
government has an interest under the reserved water rights
doctrine." <u>Id.</u> at 701.   The court concluded that the federal
agencies' interpretation was reasonable.  <u>Id.</u> at 703-04.   The court
held that "the definition of public lands includes those navigable
waters in which the United States has an interest by virtue of the
reserved water rights doctrine."  <u>Id.</u>   The court also held "that
the federal agencies that administer the subsistence priority are
responsible for identifying" specific navigable waters that would
be subject to ANILCA regulation.  <u>Id.</u> at 704.   The case was then
remanded to this court.[21]

          This case was reactivated after the <u>Katie John III</u>
decision became final.   On April 26, 1996, the federal defendants
moved for judgment on the pleadings (not the instant motion),
seeking dismissal of plaintiffs' complaint for failure to state a
claim upon which relief could be granted or, in the alternative,
for dismissal of the claim set forth in paragraph 14 of plaintiffs'
complaint for failure to join the State of Alaska as an

---

[21]     Upon remand, this court eventually entered judgment
reaffirming all of its substantive orders as to the plaintiffs'
claims and dismissing with prejudice any claims that had not been
decided by the court.  <u>See</u> Judgment, Clerk's Docket No. 296 in <u>John</u>
<u>v. United States</u>, No. A90-0484-CV.   Another appeal was then taken.
The Ninth Circuit voted to hear the case en banc.  <u>See</u> <u>John v.</u>
<u>United States</u>, 216 F.3d 885 (9th Cir. 2000).   On May 7, 2001, the
en banc court "determined that the judgment rendered by the prior
panel ... should not be disturbed or altered by the en banc court."
<u>John v. United States</u>, 247 F.3d 1032, 1033 (9th Cir. 2001).

indispensable party.[22] By order of July 26, 1996,[23] the court granted the federal defendants' motion and dismissed plaintiffs' complaint without prejudice. In the July 26, 1996 order, the court concluded that because the Board did not have authority to act on the applications for permits that plaintiffs had sought, and because plaintiffs' original complaint made no other claim, the original complaint failed to state a cause of action. In so ruling, the court expressed its concerns about two matters: (1) whether a challenge by plaintiffs to the Secretaries' regulatory determination that they had no jurisdiction under ANILCA as to navigable waters would come too late in an amended complaint, and (2) the impact of the Katie John III decision, which, while rejecting the district court's view that all navigable waters could be subject to ANILCA, nevertheless concluded that some navigable waters could be subject to ANILCA regulation.

On October 24, 1996, plaintiffs filed their first amended complaint.[24] In their amended complaint, the same plaintiffs sued essentially the same defendants,[25] asserted the same statutory basis for jurisdiction, and described the nature of their case as a civil action for declaratory and injunctive relief with respect to

---

[22]    Clerk's Docket No. 71.

[23]    Clerk's Docket No. 77.

[24]    Clerk's Docket No. 79.

[25]    The amended complaint added as a defendant the Secretary of Agriculture, who was omitted from the original complaint, and substituted Bruce Babbitt for Manuel Lujan, Jr., as Secretary of the Department of the Interior.

plaintiffs' applications to harvest and sell herring roe on kelp as
"customary trade" pursuant to ANILCA. The amended complaint
further describes plaintiffs' claim as addressing the defendants'
"disclaimer of federal regulatory jurisdiction over the marine
waters of the Tongass National Forest where plaintiffs have from
time immemorial obtained their sustenance."[26] Plaintiffs' amended
complaint describes the same administrative proceedings before the
Federal Subsistence Board leading up to the Board's March 10, 1992,
decision that declined plaintiffs' applications because of a lack
of federal jurisdiction under ANILCA over navigable waters.

As described in greater detail above, the primary thrust
of plaintiffs' original complaint was the refusal of the Board to
consider plaintiffs' applications for permits to take herring roe
on kelp in the navigable waters of Tongass National Forest because
of the Board's disclaimer of federal jurisdiction over navigable
waters under ANILCA.[27] In the original complaint, plaintiffs sought
declaratory and injunctive relief in the form of an order requiring
that the permits that plaintiffs sought be issued in order that
plaintiffs might "lawfully ... harvest and sell herring roe on kelp
during the next and subsequent seasons[.]"[28] In contrast,
plaintiffs' amended complaint seeks injunctive relief as to the
federal defendants requiring that they "promptly amend their

---

[26]     First Amended Complaint for Injunctive and Declaratory
Relief at 3, ¶ 3, Clerk's Docket No. 79.

[27]     Complaint for Injunctive and Declaratory Relief, at 8,
¶¶ 36 & 37, Clerk's Docket No. 1.

[28]     Id. at 23.

- 14 -

federal subsistence regulations to include all waters within the
boundaries of the Tongass National Forest"[29] and further requiring
that the Board issue permits to plaintiffs for the taking and sale
of herring roe on kelp with respect to the 1991 season and for "the
forthcoming and subsequent seasons[.]"[30]  In seeking that relief,
plaintiffs' amended complaint purports to expand their contentions
from a single cause of action calling into question the federal
defendants' refusal to assume jurisdiction under ANILCA over the
navigable waters of the Tongass National Forest, adding thereto a
second cause of action based upon a reserved water rights theory
spawned by the Ninth Circuit's decision in <u>Katie John III</u>, a third
cause of action based upon the Submerged Lands Act, and a fourth
cause of action based upon the Commerce Clause of the United States
Constitution.

After the federal defendants answered,[31] they filed yet
another motion for judgment on the pleadings (again not the instant
motion),[32] seeking to dismiss plaintiffs' amended complaint for
failure to join an indispensable party, for want of jurisdiction,
and for failure to state a claim.[33]  While the motion for judgment

---

[29]    First Amended Complaint for Injunctive and Declaratory
Relief at 42-43, Clerk's Docket No. 79.

[30]    <u>Id.</u> at 43.

[31]    Clerk's Docket No. 85.

[32]    Clerk's Docket No. 86.

[33]    This motion for judgment on the pleadings was summarily
denied on July 22, 1999, because this case was formally stayed from
November 17, 1997, through October 31, 1999.  Minute Order denying
motion for judgment on the pleadings, Clerk's Docket No. 118.

on the pleadings was developing, the State of Alaska moved to intervene.[34]  By order of May 1, 1997, the State's motion was granted.[35]  In permitting intervention, the court expressly observed as regards plaintiffs' amended complaint that the first cause of action "plainly puts at issue the question of whether the State of Alaska or the federal government owns the submerged lands within the Tongass National Forest."[36]  The State answered plaintiffs' first amended complaint and asserted a counterclaim seeking "a declaratory judgment pursuant to 28 U.S.C. § 2201 that plaintiffs do not have a right to federal regulation of subsistence harvesting of herring roe on kelp in the sea waters within the Tongass National Forest based on their theory that the United States owns the underlying lands."[37]  The State asserted that it, not the United States, owned the land under navigable waters within the Tongass National Forest.[38]

The court, in October of 1999, began to believe that some or all of the related ANILCA cases, including the instant case, might have been resolved or rendered moot by the Katie John III decision, changed facts, or changed regulations.[39]  Plaintiffs in this case took the view that they were not bound by the Katie John

---

[34]    Clerk's Docket No. 100.

[35]    Clerk's Docket No. 106.

[36]    Id. at 2.

[37]    State of Alaska's Answer to First Amended Complaint and Counterclaim at 17, ¶ 1,  Clerk's Docket No. 107.

[38]    Id. at 18-19, ¶¶ 10 & 11.

[39]    Minute Order, Clerk's Docket No. 120.

- 16 -

III decision and that, in any event, there remained a viable reserved  waters issue as regards the Tongass National Forest.[40] Still concerned, the court pressed plaintiffs to consider dismissing and refiling because of the court's perception that by 1999 there was a different regulatory climate.[41]  While the court was pressing the parties to this case for a resolution, it became known that an original case had been filed by the State of Alaska in the United States Supreme Court whereby the State sought a determination of its claim to all lands underlying marine waters in Southeast Alaska.  See Alaska v. United States, No. 128, Original. The court passed this information to the parties and sought their further input.[42]  As a result of further input, this case was again stayed pending a decision by the United States Supreme Court.[43]  The court reexamined the status of this case in August of 2000, and the stay remained in place.[44]

The case was reactivated in October of 2005, even though there was no decision yet in Alaska v. United States, No. 128, Original.  Upon reactivation, the court and parties agreed that

---

[40]     Joint Status Report at 1-2, Clerk's Docket No. 121.

[41]     Order re Case Status at 1-2 (Nov. 15, 1999), Clerk's Docket No. 122.

[42]     Order re Cases Status (Dec. 13, 1999), Clerk's Docket No. 125.

[43]     Order re Case Status (Jan. 6, 2000), Clerk's Docket No. 127.

[44]     Clerk's Docket No. 135.

plaintiffs would serve and file a motion to amend.[45]  In due course, that motion came before the court, and leave to amend was denied.[46]  Concurrent with their opposition to plaintiffs' motion to amend, the federal defendants moved for judgment on the pleadings as regards plaintiffs' amended complaint.  It is this motion for judgment on the pleadings that is the subject of the instant order.  While the motion to amend and the motion for judgment on the pleadings were developing, the United States Supreme Court accepted the United State's disclaimer of title to land under certain marine waters within the Tongass National Forest.  See Alaska v. United States, __ U.S. __, 126 S. Ct. 1014 (2006).[47]  As will be discussed in greater detail below, the parties dispute the impact of this disclaimer on the instant motion.

Now  before  the  court  is  the  federal  defendants' contention that they are entitled to judgment on the pleadings on the ground that plaintiffs' claim is moot or, in the alternative, that plaintiffs have failed to state a claim upon which relief can be granted.  Intervenor State of Alaska supports the federal defendants' contention that plaintiffs' amended complaint should be dismissed.  The State suggests that if the court were to grant the

---

[45]    Order re Case Status (Oct. 19, 2005) Clerk's Docket No. 144.

[46]    Clerk's Docket No. 170.

[47]    Other aspects of the State's quiet title action that are not pertinent to the instant motion were resolved in a decision published at 125 S. Ct. 2137 (2005).

federal defendants' motion, it should also dismiss the State's counterclaim and thereby terminate this litigation.

<u>Discussion</u>

"'A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" <u>Flowers v. First Hawaiian Bank</u>, 295 F.3d 966, 969 (9th Cir. 2002) (quoting <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir. 1998)). A claim should be dismissed pursuant to a motion for judgment on the pleadings "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Turner v. Cook</u>, 362 F.3d 1219, 1225 (9th Cir. 2004) (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002)).

The federal defendants first argue that plaintiffs' claim is moot because the 1992 regulations on which the claim is based have been replaced by regulations that were promulgated on January 9, 1999. "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution." <u>In re Burrell</u>, 415 F.3d 994, 998 (9th Cir. 2005). "'[A] case is moot only where no effective relief for the alleged violation can be given.'" <u>Forest Guardians v. United States Forest Service</u>, 329 F.3d 1089, 1094 (9th Cir. 2003) (quoting <u>Neighbors of Cuddy Mountain v. Alexander</u>, 303 F.3d 1059, 1065 (9th Cir. 2002)). "A controversy remains live so long as effective relief is still available." <u>Id.</u>

Reduced to fundamentals, the federal defendants' mootness argument, as well as their opposition to plaintiffs' efforts to file a second amended complaint, have focused upon the status of the Secretaries' regulations between 1992 and now. The federal defendants contend that the temporary and 1992 regulations no longer exist, so they cannot be the basis of a civil action. The federal defendants have successfully contended that plaintiffs cannot challenge the 1999 regulations because their contentions constituted a facial challenge of the legality of those regulations which was not asserted within six years of the adoption of the 1999 regulations.[48] The court's reasons for concluding that plaintiffs have not timely challenged the 1999 regulations are set forth in the court's order of February 28, 2006.[49] We now confront the question of whether plaintiffs have a viable civil action based upon the temporary and/or 1992 regulations of the Secretaries.

As discussed at some length above, the Secretaries' temporary regulations were in place when the administrative proceedings that underlie these court proceedings were concluded. Those temporary regulations were replaced by the 1992 regulations; but the federal defendants' contention that the 1999 regulations replaced the 1992 regulations, as opposed to amending those regulations, is not accurate. The preamble to the 1999 regulations speaks only of "amendments." 64 Fed. Reg. 1276, 1276 (Jan. 8, 1999). Nowhere do the 1999 regulations state that they replace the

---

[48]    See Order, Clerk's Docket No. 170.

[49]    Id.

1992 regulations.  More importantly, and quite apart from what the Secretaries have determined as regards amending or replacing their regulations, the Secretaries have consistently and throughout the entire life of this litigation taken the position, as expressed in their regulations, that they had no jurisdiction over the marine waters which are the subject of plaintiffs' complaint.

Although plaintiffs' original complaint focused upon obtaining relief from the Board because of its refusal to grant plaintiffs' applications, the legal theory underlying plaintiffs' original claim was that the federal defendants had wrongly perceived their ANILCA jurisdiction as regards navigable waters. It is true that the focus of plaintiffs' amended complaint as regards relief shifts from the Board to the Secretaries and their regulatory decision that they had no jurisdiction under ANILCA as regards navigable waters.  Nevertheless, the first theory in plaintiffs' amended complaint is founded upon the very same theory that plaintiffs had urged in their original complaint:  plaintiffs still contend that the federal defendants have wrongly perceived their ANILCA jurisdiction as regards navigable waters.  In both the original complaint and the amended complaint, plaintiffs have made it clear that their contention is a continuing one.  That is to say, fishing seasons come and go.  The Board did not act in time for there to be any decision for the 1991 season.  The Board may have ruled in time for the 1992 season; but their decision was adverse to plaintiffs, who then sued, seeking in both the original

and the amended complaints relief for the "forthcoming and subsequent seasons."[50]

      Plaintiffs timely challenged the Secretaries' navigable waters decision under their temporary and 1992 regulations. While there have been amendments to and arguably replacements of the Secretaries' regulations, the rule of the Secretaries as regards ANILCA jurisdiction over navigable waters has never changed. The plaintiffs' position has never changed. This dispute is still very much alive today.

      It is of course obvious that the court cannot afford the plaintiffs relief in the form of a direction to the Board that permits be issued for some past year, but that does not mean that no relief is available. In recognition of the problems presented by the considerable passage of time in this case, plaintiffs' amended complaint, rather than seeking the issuance of permits, seeks relief in the form of a permanent injunction to the Secretaries, requiring that they adopt federal subsistence regulations which include <u>all</u> waters within the boundaries of the Tongass National Forest. That kind of relief is plainly available under the judicial enforcement provision of ANILCA, 16 U.S.C. § 3117, if available administrative remedies have been exhausted.

      Here, the available administrative remedies have been exhausted. Plaintiffs applied for the permits necessary to take

---

[50]   First Amended Complaint for Injunctive and Declaratory Relief at 43, Clerk's Docket No. 79. <u>See</u> <u>also</u>, Complaint for Injunctive and Declaratory Relief at 20, ¶ 44a, Clerk's Docket No. 1.

herring roe on kelp.  Their applications were not acted upon in
1991; and in 1992, the Board rejected the applications in reliance
upon the then operative temporary regulations of the Secretaries.
The Board also signaled that the result would be the same under the
then proposed 1992 regulations of the Secretaries.  Because those
regulations have never changed as regards navigable waters in the
Tongass National Forest, it is entirely clear that any further
administrative recourse would be futile.

        The court concludes that plaintiffs' action as stated in
their amended complaint is not moot.  However, that does <u>not</u> mean
that the federal defendants' motion for judgment on the pleadings
fails.  The federal defendants argue, in the alternative, that they
are entitled to judgment as a matter of law because plaintiffs have
failed to state a claim upon which relief can be granted.

        Plaintiffs' amended complaint purports to state four
"causes of action".  As a legal proposition, plaintiffs' complaint
states only one cause of action:  a claim based upon 16 U.S.C.
§ 3117 that the federal defendants have failed to provide
plaintiffs with the priority for subsistence uses to which they
believe they are entitled under ANILCA.  Plaintiffs' four "causes
of action" are in reality four different theories in support of the
ANILCA-based cause of action.  In what follows, the court addresses
the question of whether or not the federal defendants are entitled
to judgment as a matter of law on any or all of plaintiffs'
theories of their ANILCA claim.

<u>Theory One:  Navigable Waters</u>

The federal defendants contend that plaintiffs cannot prevail as a matter of law on their first theory, which is that "ANILCA jurisdiction [exists] in navigable waters overlying submerged lands within the Tongass National Forest to which the United States holds legal title."[51]  Plaintiffs argue that the navigable waters in the Tongass National Forest are public lands because the United States has title to the submerged lands by virtue of an Executive Order dated February 16, 1909,[52] which expanded the boundaries of the Tongass National Forest.

The federal defendants and the State of Alaska argue that plaintiffs' first theory must fail because the issue of who holds title to the submerged lands within the Tongass National Forest was resolved in <u>Alaska v. United States</u>, No. 128, Original.  As set forth above, in response to the State's complaint, the United States disclaimed title to certain marine waters within the Tongass National Forest, and that disclaimer was accepted by the Court. <u>See Alaska</u>, 126 S. Ct. at 1015.  However, the disclaimer does not

---

[51]     First Amended Complaint for Injunctive and Declaratory Relief at 14, Clerk's Docket No. 79.

[52]     <u>Id.</u> at 15, ¶ 17.  The navigable waters theory that plaintiffs advance here is different from that advanced in <u>Katie John I</u>, <u>II</u>, and <u>III</u>.  There, the <u>Katie John</u> plaintiffs argued that public lands for purposes of ANILCA included all navigable waters, by virtue of the navigational servitude.  The federal defendants argued that public lands included those navigable waters in which the United States had an interest under the federal reserve water doctrine, an argument with the court of appeals accepted. Here, plaintiffs assert that the navigable waters of the Tongass National Forest are public lands because the United States expressly reserved title to the submerged lands in an executive order.

apply to <u>all</u> marine waters within the Tongass National Forest. There are two exceptions set forth in the disclaimer. First, the disclaimer excludes "any submerged lands that are subject to the exceptions set out in § 5 of the Submerged Lands Act...." <u>Id.</u> Section 5 of the Submerged Lands Act, 43 U.S.C. § 1313(a), excepts from the transfer of title to the states "any rights the United States has in lands presently and actually occupied by the United States under claim of right," and excepts lands "expressly retained by or ceded to the United States when the State entered the Union[.]" The second exception in the disclaimer is for "any submerged lands that were under the jurisdiction of an agency other than the United States Department of Agriculture on the date of the filing of the Complaint in this action." <u>Alaska</u>, 126 S. Ct. at 1015.

Plaintiffs contend the disclaimer does not serve to transfer title to the State of Alaska. Because the United States still holds title, plaintiffs insist that the court can grant them relief based on theory one. While the federal defendants and the State agree that the disclaimer does not convey land, they argue that this fact is irrelevant because what matters is that the United States has disclaimed any interest in the marine waters of the Tongass National Forest.

The broad impact of No. 128, Original, has not been sufficiently developed by the parties in connection with the instant motion to make possible a definitive ruling as to the legal effect upon plaintiffs (who were not a party to No. 128, Original)

of the United States' disclaimer of title to certain marine waters within Tongass National Forest.  That said, the court believes that plaintiffs are unlikely to persuade the court that the Government's disclaimer could mean anything other than that the State of Alaska has title to the submerged lands beneath the marine waters of the Tongass National Forest by operation of the Statehood Act, Pub. L. No. 85-508, § 6(m), 72 Stat. 339 (1958), and the Submerged Lands Act, 43 U.S.C. § 1311(a).  It is the perception of the court that, as to plaintiffs' first theory, the viable issue has to do with how, if at all, plaintiffs' claim of ANILCA jurisdiction intersects with the exceptions to the United States' disclaimer of title.

Plaintiffs argue that the exceptions in the disclaimer make it inapplicable to their claim.  The federal defendants and the State disagree, in large part because they read plaintiffs' first amended complaint as alleging that the United States holds title to all of the submerged lands beneath the navigable waters of the Tongass National Forest.  The federal defendants and the State thus contend that it is irrelevant that the United States may still claim an interest in some of the land.

As with the more general proposition of the effect of No. 128, Original, the court is presently unconvinced that the exceptions to the United States' disclaimer in No. 128, Original, could not, as a matter of law, support plaintiffs' first theory of their case.  Even if plaintiffs' amended complaint is read as the federal defendants and intervenor would read it, as focusing upon the Tongass National Forest as a whole, it does not necessarily

- 26 -

follow that plaintiffs must succeed as to the whole or fail entirely.  The question for the court here is whether, as a matter of law, plaintiffs have no claim at all.  If the United States still holds title to some of the submerged lands within the Tongass National Forest, and it appears that it may, then the federal defendants are not entitled to judgment as a matter of law on plaintiffs' first theory.

Theory Two:  Reserved Waters

The federal defendants contend that plaintiffs cannot prevail as a matter of law on their second theory, which is that all waters within the boundaries of the Tongass National Forest were reserved, thereby creating an interest in those waters sufficient to make such waters public lands for purposes of Title VIII of ANILCA.[53]  The federal defendants argue that to the extent the second theory alleges that the United States holds reserved water rights in the marine waters of the Tongass National Forest, this claim has been rendered moot by the Katie John litigation.  To the extent that plaintiffs' second theory is that the federal defendants erred in failing to find that the United States held reserved rights in the marine waters within the boundaries of the Tongass National Forest, the federal defendants contend that this is a facial challenge to the 1999 rule-making and that such a challenge is barred by the statute of limitations.

---

[53]     First Amended Complaint for Injunctive and Declaratory Relief at 40, ¶ 61, Clerk's Docket No. 79.

Although plaintiffs make no argument in response, the court declines to take plaintiffs' silence as to its second theory as a concession that the federal defendants are entitled to judgment as a matter of law. What the federal defendants overlook is that plaintiffs' amended complaint -- which asserts a reserved water rights theory in support of ANILCA jurisdiction[54] -- was filed in October of 1996, <u>after</u> the Ninth Circuit's announcement of the reserved water rights doctrine as a basis for ANILCA jurisdiction in <u>Katie John III</u> and <u>before</u> defendants' 1999 regulations were adopted. It was plaintiffs' claim in 1996 that the federal defendants should under a reserved waters theory afford them permits under Title VIII of ANILCA to take herring roe on kelp. The federal defendants had no such regulations in 1996; but plainly plaintiffs knew in October of 1996 that a reserved waters theory was likely to find favor in the Ninth Circuit as a result of <u>Katie John III</u>. If there were reserved waters in the Tongass National Forest, the federal defendants should have had such regulations. The court cannot at this time say that plaintiffs' second theory of their civil action must fail as a matter of law.

<u>Theory Three:  Submerged Lands Act</u>

The federal defendants contend that plaintiffs cannot prevail as a matter of law on their third theory, which is that an interest in the navigable waters within the boundaries of the Tongass National Forest was created by section 6(a) of the Submerged Lands Act, 43 U.S.C. § 1314(a), and that this interest is

---

[54]    <u>Id.</u>

sufficient to make such waters public lands for purposes of Title VIII of ANILCA.[55]  The federal defendants' argument here is based on the court of appeals' reasoning in <u>Katie John III</u> as to the navigational servitude.  As plaintiffs are quick to point out, the precise issue raised in their third theory was not decided in <u>Katie John III</u>; however, that does not mean that the reasoning of that case cannot be extended to the issue now before this court.

In <u>Katie John III</u>, 72 F.3d at 702-03, the court rejected the contention that all navigable waters were public lands simply because of the control over navigable waters that is created by the navigational servitude.  The court emphasized that the navigational servitude, which derives from the Commerce Clause of the United States Constitution, is "'a concept of power, not of property.'"  <u>Id.</u> at 702 (quoting <u>United States v. Certain Parcels of Land</u>, 666 F.2d 1236, 1238 (9th Cir. 1982).  Similarly, section 6(a) of the Submerged Lands Act, 43 U.S.C. § 1314(a), deals with power and not property rights.  Section 6(a) provides that the United States is retaining "all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters", but it also provides that these "shall not be deemed to include, proprietary rights of ownership[.]"  Because it is not a matter of property rights, section 6(a) of the Submerged Lands Act cannot be said to create a property interest in marine waters within the Tongass National Forest.  The court concludes from the

---

[55]    <u>Id.</u> at 41, ¶ 62.

reasoning in <u>Katie John III</u> that section 6(a), 43 U.S.C. § 1314(a), reserves for the United States a power -- but not a property right sufficient to form a basis for ANILCA jurisdiction.  Plaintiffs' third theory fails as a matter of law.

<u>Theory Four:  Commerce Clause</u>

The federal defendants contend that plaintiffs cannot prevail as a matter of law on their fourth theory, which is that "Congress plainly intended that ANILCA's federal subsistence priority should extend as well to those locations within the paramount regulatory power of Congress under the commerce clause",[56] which would include the marine waters of the Tongass National Forest.  The federal defendants argue that this theory must fail because the Ninth Circuit has already held that the Commerce Clause does not make navigable waters and submerged lands beneath such waters public lands for purposes of the ANILCA subsistence priority.  Plaintiffs argue that their Commerce Clause claim should survive because they have adequately pleaded this claim and because the Ninth Circuit has recognized that Congress invoked its Commerce Clause power when enacting ANILCA.

The court perceives no difference between plaintiffs' fourth theory and the argument that plaintiffs advanced in the <u>Katie John</u> litigation.  On appeal, plaintiffs argued that all navigable waters are public lands "because, in ANILCA, Congress expressed its intent to exercise its Commerce Clause powers to

---

[56]    <u>Id.</u> at 42, ¶ 63.

regulate subsistence fishing in navigable waters." <u>Katie John III</u>, 72 F.3d at 702.  The court "reject[ed] the argument that Congress expressed its intent to exercise its Commerce Clause powers to regulate subsistence fishing in all Alaskan navigable waters." <u>Id.</u> at 703.  Plaintiffs' fourth theory fails as a matter of law.

<u>Conclusion</u>

Defendants' motion for judgment on the pleadings is granted in part and denied in part.  Plaintiffs' claim is not moot. The first and second theories of their civil action may or may not survive as a matter of law after further proceedings.  Plaintiffs' third and fourth theories of their civil action fail as a matter of law.  The federal defendants are entitled to partial judgment as a matter of law as to the third and fourth theories of plaintiffs' civil action.  Because the court has not dismissed plaintiffs' amended complaint, the counterclaim of the State of Alaska remains viable.

DATED at Anchorage, Alaska, this <u>31st</u> day of May, 2006.


<u>/s/ H. Russel Holland</u>
United States District Judge