# DECLARATION OF DIANE M. RAY

I, Diane M. Ray, do upon personal knowledge declare as follows:

1. That I am currently employed as an Administrative Records Specialist for the U.S. Fish and Wildlife Service, Region 7, Anchorage Alaska.

2. That in the course of my employment, I keep and maintain administrative records for the Federal Subsistence Board.

3. That at the request of the Department of Justice, I have reviewed Board documents relating to the Maknahti Island withdrawal.

4. That review authenticates the following documents are true copies of constituent parts of the Maknahti decision, 71 Federal Register 49997-99 (August 24, 2006), record:

> • "Materials in Support of Proposals 25 and 37 and a recommendation for extension of the Federal subsistence priority to marine waters within the Tongass National Forest" (excerpts attached as Attachment A);

> • "Identification of Marine Waters Subject to Federal Subsistence Management...", dated April 26, 2006 (attached as Attachment B);

> • "Federally Owned Submerged Lands in Southeast Alaska", dated November 9, 2005 (attached as Attachment C).

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct, as provided under 28 U.S.C. § 1746.

Executed this 27th day of April, 2010.

*Diane M. Ray*
DIANE M. RAY

EXTRA COPY FR
SUBS: RESV° WTR IN SE
FWS.1874 ('08)

Southeast Regional Advisory Council
Yakutat, Alaska, October 15 –19, 2001

# Materials in Support of Proposals 25 and 37 and a recommendation for extension of the federal subsistence priority to marine waters within the Tongass National Forest

Submitted by John Littlefield and Sitka Tribe of Alaska

ATTACHMENT *A*

# Table of Contents

| Tab | Document |
|-----|----------|
| 1 | Cover letter from John Littlefield dated October 5, 2001 |
| 2 | Legal analysis for recommendation to extend the federal subsistence priority to marine waters within the Tongass written by Jude Pate for Sitka Tribe of Alaska |
| 3 | Request for assistance from BLM and compilation of executive and public land orders documenting federal ownership of certain areas within Sitka Sound, including the Maknahti Islands dated August 13, 2001 |
| 4 | Compilation of presidential proclamations and executive orders establishing the boundaries of the Tongass National Forest beginning August 20, 1902 and ending June 10, 1925 |
| 5 | Diagramatic map of Tongass National Forest boundaries filed with Executive Order 1742, dated June 10, 1925 |
| 6 | Executive Orders 1458 and 1459 and diagrams dated January 11, 1912, noting Forester, Wolf Rock and Hazy Islands are within the boundaries of the Tongass National Forest |
| 7 | Brief of the United States filed to the U.S. Supreme Court in Alaska v. United States, No. 128 Original, dated April 2000 |

October 5, 2001

Chairman Bill and Council Members,

I want to bring you up to date on discussions that I have been having with Fred and OSM staff.

The discussions centered around the decision of the FSB to withdraw my proposals 25 and 37 from the Yakutat meeting. You all should have copies of these proposals and you can refer to them if needed.

First, leaving the content of the proposals aside. I believe the FSB jumped into this before their proper time.

Proposals are submitted to the RAC and by law [ANILCA §805(a)(3)(A)] the RAC has the authority to "the review and evaluation of proposals for regulations, policies. . . ."  The RAC also has the authority to provide a "forum for the expression of opinions and recommendations by persons interested in any matter related to the subsistence uses of fish and wildlife within the region." [ANILCA §805(a)(3)(B)].  The RAC has both the authority and the responsibility for the "encouragement of local and regional participation. . . in the decision making process affecting the taking of fish and wildlife. . . ." [ANILCA §805(a)(3)C)]

After RAC action, then approved proposals are forwarded to the FSB for their action.  The FSB (Secretary) can choose not to follow the RAC's recommendations [ANILCA §805 (c)] only if they are "not supported by substantial evidence, violate recognized principles of fish and wildlife conservation, or would be detrimental to the satisfaction of subsistence needs."

That's what the law (ANILCA) states!

In my case the FSB, by facsimile 9/13/01, notified me they were withdrawing my proposals because the current regulations [36 CFR

242.3 (b)(28)] exclude the marine waters inside the external boundaries of the Tongass.

I contend this violates the proper procedure for consideration of proposals. My proposals 25 and 37 fit squarely within the authority given to the RAC by ANILCA under §805(a)(3)(A), (B) & (C). To the extent that my proposals conflict with the current regulations, my proposals are within the RAC's authority to change the current regulations. To the extent that my proposals are in conflict with the policy and opinion of the FSB, my proposals are an expression of a dissenting opinion and policy which the RAC has the authority and duty to hear. To the extent that my proposals are discouraged by the established decision making process, my proposals are consistent with the RAC's responsibility to encourage local and regional participation in that decision making process.

At this point in time, the RAC is the proper body to determine whether these proposals should pass, be amended, or defeated. If and when the RAC adopts my proposals, then the FSB may decide to reject the RAC's recommendations that run afoul of the standards set out under ANILCA in §805(c). But if the action by the FSB to remove my proposals is allowed to stand, the FSB will have effectively usurped the responsibility and authority that lies with the RAC for the original consideration of proposals.

Furthermore, the role of the staff has become confused and tangled in this process. The staff (if it is their opinion) should state they were opposed to the proposals based upon their interpretation of the regulations and leave it up to the policy body (the RAC) to determine what action was needed. Interestingly enough, staff recommendations on the Sitka Tribe of Alaska (STA) proposals and some others, do just that. Specifically, they quoted all the regulations and then opposed the passage of the proposal based on no jurisdiction. They should have used the same procedure for my withdrawn proposals. Why didn't they do that?

I think it is for purely political reasons that these proposals were withdrawn. I've relayed these concerns to Fred, Bill Knauer, and Tom Boyd. My request to each of them was to reinstate these proposals and do the staff analysis as they would with any other proposal. The final decision today from Tom was that they would not be reinstated because they have no jurisdiction.

I am under great pressure from the people of Sitka to do something to protect our herring egg subsistence fishery. As I'm sure most of you are aware, this year was the worst in memory for Sitka herring egg subsistence users and the second best season ever for the Commercial herring sac roe fishery. The State continues to give the STA lip service and denies relief because they continue to say there are lots of herring. Maybe so, but if they catch all the herring in the local areas, than the subsistence users suffer.

The involvement of the RAC, as a regional body, is critical because although herring eggs are predominately harvested in Sitka, the resource is shared throughout Alaska and Canada and the Lower 48. All of our neighbors shared in the dismal Sitka harvest this year.

Second, concerning the content of my proposal and the substance of the reason given for their withdrawal by the FSB: Jurisdiction. The issue of who has jurisdiction over the marine waters in the Tongass (also the Chugach) has been one that the RAC has pursued at least since the annual report of 1993. The legal briefs requested by the RAC in the 1999 annual report were not even mentioned in the reply from the FSB. Where are they?

It is clear to me that the United States has jurisdiction of the marine waters of the Tongass. The Tongass includes at least the marine waters out to 3 miles and I believe the existing regulations don't comply with the actual language of the law, ANILCA, nor it's intent.

The law of ANILCA and its subsistence priority apply to all lands, waters and interests therein under §802(1). If the United States either

owns title to the submerged lands beneath the marine waters of the Tongass or has reserved less than an ownership interest, as stated in *Katie John*, then ANILCA applies to these marine waters. There are at least three ways that the United States has an interest in the marine waters of the Tongass:

> 1) The original boundaries of the Tongass include the marine waters, in some areas up to sixty miles out;
> 2) During WWII the United States took specific ownership of the submerged lands within a number of areas in Sitka Sound, including a withdrawal of the submerged lands and waters surrounding the Maknahti Islands which is one of our most reliable herring spawning grounds; and
> 3) The United States has reserved less than an ownership interest in the marine waters of the Tongass.

If it is so clear to the FSB that there is no federal jurisdiction over the marine waters of the Tongass, then why are the top lawyers for the United States arguing that <u>there is federal jurisdiction</u> over the marine waters of the Tongass in pending litigation to the U.S. Supreme Court? In a U.S. Supreme Court brief filed April, 2000, the Solicitor General in *Alaska v. United States* disputed the Alaska's claim to ownership of the submerged lands within the Tongass:

> The presidential proclamations and executive order creating and enlarging the Tongass National Forest correspondingly established its exterior boundary seaward of the marine coast line. Upon Alaska's admission to the Union, the United States expressly retained title to lands within national forests, subject to Alaska's right to select 400,000 acres of those lands for the State's use. The United States accordingly claims rights and interests in the marine submerged lands within the Tongass National Forest."

I want to have time at the meeting in Yakutat to present maps and a briefing document that identifies the original boundaries of the Tongass and the WWII withdrawals in Sitka Sound for the RAC. I intend to make at least one motion to modify the regulations by deleting the words "and excluding marine waters;" from 242.3 (b) 28. Hopefully someone will make a second to this motion so we can act on it.

I would also like to amend the agenda to reinstate proposals 25 and 37 for RAC consideration. The latest (today) proposal listing on the OSM web page still has all of the proposals I submitted listed. There should not be a problem with public notice. Everyone opposed or in favor of these proposals has had adequate time to comment. I've held one meeting with the STA and Coast Guard specifically about proposal 25.

I wanted each of you to know about this prior to our teleconference on the 28th so that you know the background on what's going on and what I will be addressing.

Thanks for listening.

John Littlefield

I. The Regional Advisory Council (RAC) has a tremendous amount of power that comes directly from Congress. An important element of this power is that the Secretary and Federal Subsistence Board (FSB) are required to give deference to the RAC - - - and not the other way around.

A. The RAC has the following authority and responsibilities under the law:

1. To review and evaluate of proposals for regulations, policies, management plans, and other matters relating to subsistence uses of fish and wildlife within the region. ANILCA §805(a)(3) (A)

2. To provide a forum for the expression of opinions and recommendations by persons interested in any matter related to the subsistence uses of fish and wildlife within the region. ANILCA §805(a)(3)(B)

3. To encourage local and regional participation in the decision making process affecting the taking of fish and wildlife on public lands within the region. ANILCA §805(a)(3)(C)

4. To prepare an annual report to the Secretary containing, among other information, a recommended strategy for fish and wildlife populations within the region to accommodate subsistence uses and needs and recommendations concerning policies, standards, guidelines, and regulations to implement the strategy. ANILCA §805(a)(3)(D)

B. The term "Secretary" means the Secretary of the Interior, except when the term is used with respect to any unit of the National Forest System, "Secretary" means the Secretary of Agriculture. ANILCA §102(12)

C. The Secretary has the responsibility to monitor the effectiveness of the implementation of the provisions of the law, including closure and other administrative authority to protect subsistence uses. **ANILCA §806**

D. Both the Secretaries of Interior and Agriculture have adopted a regulation that delegates a portion of their authority and responsibility to the FSB. **36 C.F.R. 242.10 (a)**

E. The Secretary/FSB is required to adopt regulations necessary and appropriate to carry out the Secretary's responsibilities under the law. **ANILCA §814**

F. The Secretary/FSB is required to give deference to recommendations made by the RAC and adopt these recommendations as regulations unless:

    1. The recommendation is not supported by substantial evidence, or

    2. The recommendation violates recognized principles of fish and wildlife conservation, or

    3. The recommendation would be detrimental to the satisfaction of subsistence needs.
    **ANILCA §805(c)**

G. If the Secretary/FSB does not adopt a recommendation made by the RAC, then the Secretary/FSB must set forth a factual basis and the reasons for that decision. **ANILCA §805(c)**

**Discussion:** The RAC is given extremely broad authority and responsibility under the law to consider proposals and make recommendations on any matters relating to subsistence uses

and needs and the strategy and regulations necessary to implement the subsistence program.

The FSB and the Secretary cannot take away or narrow the authority the RAC has received from Congress to consider proposals and make recommendations.

Recommendations from the RAC relating to the Tongass National Forest would be forwarded to either the FSB or the Secretary of Agriculture.

Both the FSB and the Secretary of Agriculture must give deference to and adopt recommendations made by the RAC unless the recommendations fail to meet on of the three standards outlined above from ANILCA §805(c).

II.  **The RAC has the power to consider proposals and make recommendations regarding jurisdiction and the areas to which federal subsistence priority attaches.**

Discussion:  The extent and areas to which the federal subsistence priority attaches is an essential element of the RAC's duty under ANILCA to develop a strategy to implement policies, standards, guidelines, and regulations to protect subsistence.

For this reason, the RAC's broad authority and responsibility under the law includes the power to consider proposals and make recommendations regarding the inclusion of additional federal reservations and reserved water rights to which the federal subsistence priority attaches.

ANILCA does not limit the scope of the RAC's authority concerning recommendations regarding the inclusion of additional federal reservations.  Any regulation or policy that

limits the RAC's authority in this manner is inconsistent with the law of ANILCA.

III. **A recommendation by the RAC to amend the regulations to extend federal jurisdiction to the marine waters of the Tongass would be supported by substantial evidence.**

    A. Current regulations exclude the marine waters of the Tongass from federal jurisdiction. **36 C.F.R. 242(b)(28)**

    B. ANILCA extends the subsistence priority to all lands and waters in which the United States has an "interest." **ANILCA §102(1) and §804**

    C. The United States has an ownership interest in the submerged lands and marine waters surrounding the Maknahti Islands in Sitka Sound. **Executive Orders 8877 and 2918**

    D. The United States may also have an ownership interest in the submerged lands and marine waters surrounding Long Island, Cape Burunof, Peisar Island, Legma Island, Shoals Point, Cape Edgecumbe, and Beaver Point. **Executive Order 8877**

    E. The United States has an ownership interest in all the submerged lands and marine waters within the boundaries of the Tongass by presidential proclamations and executive orders establishing the Tongass boundary sixty miles seaward. **Proclamation of September 10, 1907, 35 Stat. 2152; Executive Order 908 (July 2, 1908); Proclamation of February 16, 1909, 35 Stat. 2226; Proclamation of June 10, 1925, 44 Stat. 2578.**

F. The Solicitor General for the United States has argued to the U.S. Supreme Court that the submerged lands and marine waters within the boundaries of the Tongass are owned by the United States. **Alaska v. United States, No. 128 Original, Brief for the United States filed April, 2000**

G. Even if the United States does not have an ownership interest in the submerged lands and marine waters within the Tongass, the Ninth Circuit Court of Appeals has directed the U.S. Forest Service to identify the extent of its "reserved waters." **Katie John v. U.S., No. 94-35481**

**Discussion:** There are at least three separate grounds for the RAC to support a recommendation that the marine waters of the Tongass are subject to the federal subsistence priority.

First, at least within Sitka Sound there are a number of areas, including the Maknahti Islands, where the submerged lands and marine waters are under federal ownership. An ownership interest of these lands and waters is more than enough for the federal subsistence priority to attach.

Second, as established by presidential proclamations and executive orders, the United States owns the submerged lands and marine waters within the boundaries of the Tongass. In some places the boundaries of the Tongass extend up to sixty miles seaward. This same point is made by the top lawyers for the United States in their arguments to the U.S. Supreme Court. As stated above, an ownership interest of these lands and waters is more than enough for the federal subsistence priority to attach.

Third, in *Katie John* the Ninth Circuit Court of Appeals ordered the U.S. Forest Service to determine the extent of the reserved waters to which the federal subsistence priority attaches.

Marine waters were reserved in the Tongass, if for nothing else, for the transportation of logs because of the lack of a connected road system. Although this interest in "reserved water rights" is less than an ownership interest, it is still enough for the federal subsistence priority to attach.

If the RAC does decide to amend the regulations to include the marine waters of the Tongass within federal jurisdiction, the FSB and the Secretary would be required to adopt this recommendation because it is supported by substantial evidence.

LAW OFFICE OF
# MICHAEL JUDE PATE
403 Lincoln Street, P.O. Box 6384
Sitka, Alaska 99835

Phone: (907) 747-2814        email: jude@ptialaska.net        Fax: (907) 747-2834

August 13, 2001

Robi Havens
Land Law Examiner
Bureau of Land Management
Alaska State Office
222 West 7th Ave. #13
Anchorage, Alaska 99513-7599

Dear Mrs. Havens:

Please consider this letter as the formal request by the Sitka Tribe of Alaska for assistance from your agency in gathering certain governmental records relating to federally submerged lands and waters in the area of Sitka, Alaska.

Attached to this letter is a record of select Executive and Public Land Orders, portions of nautical charts, and excerpts from an environmental assessment concerning subsistence use of Halibut. These records demonstrate that the United States may still hold title to federally submerged lands and waters to perhaps as many as ten areas in and around Sitka. In particular, these records show that at least one area of land and water (Makhnati) was withdrawn and that the subsequent revocation was partial in nature and specifically revoked only the area of land and left the water area below mean high tide under federal title.

Congress adopted the Alaska National Interest Lands Conservation Act (ANILCA) in 1980, a law that makes subsistence uses a priority on public lands in Alaska. ANILCA defines public lands as "lands, waters, and interests" to which the United States holds title. Thus, assuming that Makhnati and other areas of water in fact remain under federal title, the federal subsistence priority will protect subsistence uses in these areas. Federal studies, such as the environmental assessment performed by the Northern Pacific Fisheries Management Council, support this assumption.

Sitka Tribe requests your immediate government-to-government assistance in gathering any and all records and documents that would either support, modify, or negate our assumption that these areas of water are held under federal title. The substance of this request is integral to the protection of subsistence uses for more than 3,000 tribal citizens and therefore of the utmost priority for the Sitka Tribal Council.

Thank you,

Michael Jude Pate
Attorney for Sitka Tribe

# INDEX

| Document | Page |
|---|---|
| I. Executive Order 8877, withdrawing certain lands and waters in the vicinity of Sitka, Alaska | 1-2 |
| II. Executive Order 9526, clarifying that once the wartime emergency is lifted jurisdiction would revert to the Department of Interior | 3 |
| III. Public Land Order 2918, partially revoking Executive Order 8877 | 4 |
| IV. Portions of Nautical Charts in the vicinity of Sitka, Alaska, described in Executive Order 8877 | |
| A. Overview, NOAA chart 17320 | 5 |
| B. Makhnati Island, NOAA chart 17327 | 6 |
| C. Long Island & Cape Burunof, NOAA chart 17325 | 7 |
| D. Peisar Island, NOAA chart 17325 | 8 |
| E. Legma Island, NOAA chart 17325 | 9 |
| F. Shoals Point, NOAA chart 17326 | 10 |
| G. Cape Edgecumbe, NOAA chart 17326 | 11 |
| H. Beaver Point, NOAA chart 17326 | 12 |
| V. Lighthouse Reserves, NOAA chart 17320 | 13 |
| VI. Excerpts from Environmental Assessment on Defining Halibut Subsistence Fishery | 14-18 |

DRAFT FOR PUBLIC REVIEW

ENVIRONMENTAL ASSESSMENT/REGULATORY IMPACT REVIEW/

INITIAL REGULATORY FLEXIBILITY ANALYSIS

FOR

A REGULATORY AMENDMENT

FOR

DEFINING A HALIBUT SUBSISTENCE FISHERY CATEGORY

Prepared by

Staff
North Pacific Fishery Management Council
Alaska Department of Fish and Game
International Pacific Halibut Commission
National Marine Fisheries Service

August 11, 2000