DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:(907)271-5452
Facsimile:(907)271-5827
Email: dean.dunsmore@usdoj.gov
Attorney for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LINCOLN PERATROVICH, et al., ) | |
| ) | |
| Plaintiffs, ) | No. 3:92-cv-0734-HRH |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | DECLARATION OF |
| FEDERAL SUBSISTENCE BOARD, et al., ) | KENNETH D. VAUGHAN |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pursuant to 28 U.S.C. 1746, Kenneth D. Vaughan declares and states:

1. I am a Deputy Director of Engineering for the USDA Forest Service, Region 10, in Juneau, Alaska. I have held this position since 2002. I have been employed by the Forest Service since 1971 and have worked for Region 10, covering both the Tongass and Chugach National Forests, since 1979. Since January of 2008, I also serve as a Deputy Director of

Engineering in Region 6 (headquartered in Portland, Oregon).

2. On November 7, 2002, I signed a declaration that Plaintiffs in this case have attached to their Motion for Summary Judgment (Docket 232) as Exhibit C.

3. In that declaration, I stated that the Forest Service had identified approximately 350 sites on the Tongass National Forest where timber harvest had occurred prior to Alaska statehood. I stated that it was likely that at least some form of log transfer facility (LTF) had been constructed at these sites. In that declaration, I specifically named 11 sites. This declaration is intended to expand upon my 2002 declaration.

4. I make this declaration based on personal knowledge, my review of Forest Service records, consultation with other Forest Service personnel who have personally visited some of the LTF sites, and Forest Service personnel who maintain sivicultural records of timber harvest activity by specific stands (harvest units) to obtain approximate dates when logging occurred. I have inferred construction dates from harvest dates when other records were not available.

5. The Forest Service has records of every place that there has been timber harvest, stand by stand, since 1917. However, the Forest Service does not know, with any specificity, every LTF that was constructed prior to statehood, nor the exact location, type, or size of any such LTF.

6. When I arrived in Alaska, I heard stories and saw photos that suggest that early LTFs were rudimentary, with little concern for water quality, fisheries, or bark deposit. Many of these early LTFs were "beaver slides" (steep ramp of logs to slide the harvest logs into the water, even at low tide) or "Single A-Frames" (where logs were allowed to swing out from the truck and then were released to fall in the water). These early LTFs were relatively small and are scattered throughout Southeast Alaska. A beaver slide structure might need a tideland area the size of a double-car driveway. A large pre-statehood LTF could have used up to a quarter acre of tideland. These LTFs frequently partially consisted of rock fill, and if any of the structure remains in place, the filled area may not be marine waters. However erosion, decay of logs, and corrosion of metal has likely worn away many of the pre-

statehood structures. The LTFs would normally be partially located on tidelands between the mean low and high tide lines.

7. In many locations, LTFs have been reconstructed after statehood. Generally, the Forest Service would have obtained a lease or easement from the State in order to substantially expand the footprint of the constructed facility. Due to the enlargement of modern LTFs over those constructed prior to statehood, I do not know if it is possible for the Forest Service to determine the footprint of the pre-statehood LTFs.

8. Following is more detailed information for the specific sites I identified in my 2002 declaration:

   a. <u>Hollis</u>: Hollis was reportedly the first logging camp on Prince of Wales Island (POW); it was identified in some records as being operational from 1960 - 1972. Harvest in the surrounding area began in 1956, so I have inferred that construction of the original LTF was prior to the operating period associated with the logging camp, and consequently, prior to statehood. The State of Alaska selected the site under the Statehood Act, and the land was conveyed to the State.

Peratrovich v. US
No. 3:92-cv-0734-HRH
Declaration of Kenneth D. Vaughan         4

The State subsequently sold the land into private ownership. When I visited the area several years ago, the site of the original LTF was being used as a private barge landing facility.

b. Ratz Harbor: Ketchikan Pulp Company operated a camp and facilities at Ratz Harbor on POW from 1959 – 1967, according to Forest Service records. I visited this site within the last year, and although there is a small flat area on the uplands where the logs were stored prior to being put into salt water, called "watering the logs," there are no apparent remains of the marine development. For that period of time, native timber crib (a structure built with timber harvested on or near the site) with log fill would likely have been constructed and the logs would have long since decayed or been compromised by ship worms.

c. Coffman Cove: Coffman Cove is located on POW. The LTF in Coffman Cove was reconstructed several times, last in about 1996 by Ketchikan Pulp Company. Due to the reconstruction, there is no apparent physical evidence, nor to my knowledge, any record evidence of the footprint of the pre-statehood LTF.

d. <u>12 Mile Arm</u>: 12 Mile Arm is located on POW. This site was operated by Ketchikan Pulp Company. Due to the dates of timber harvest, I infer there was an LTF at this site prior to statehood. When I visited the site several times in the early 1990s through 2003, I observed the remains of a log bulkhead circa 1970's. I would infer that the upland remains of that bulkhead were in a location close to the original facilities, but I observed no physical evidence of the original facilities. The lack of physical evidence was confirmed by another Forest Service employee, Gary Sonnenberg, who inspected the site for environmental contamination.

e. <u>Polk Inlet</u>: At Polk Inlet, on POW, there is an operational LTF. This LTF was reconstructed in the 1980's to be a substantial long-term facility to handle larger volumes of activity. Timber stand data provides dates of harvest that predate statehood and provide a basis to infer the presence of an LTF constructed prior to statehood. However, there is no apparent physical evidence, nor to my knowledge, any

record evidence of the footprint of the pre-statehood LTF.

f. <u>Shoal Cove</u>: At Shoal Cove, in Carroll Inlet on Revillagigedo Island, there is a current LTF site that was reconstructed in the mid-1980's as a deep water LTF. The reconstructed facility has a much larger footprint than those typical of 1950's-1960's LTF sites. The patterns of harvest units in the timber stands records suggest that pre-statehood, there was a very small footprint and a low volume of logs were removed.

g. <u>Vank Island</u>: This island, located between Wrangell and Zarembo Islands was essentially completely clearcut between approximately 1925 – 1965. Because of the harvest dates, I have inferred that an LTF would have been constructed prior to statehood. I have no knowledge of any remaining physical evidence of an LTF, including the location or size of any such LTF.

h. <u>Fish Bay</u>: Fish Bay is located at the northwest end of Baranof Island. Forest Service records indicate that there were large harvest units in the area in the

Peratrovich v. US
No. 3:92-cv-0734-HRH
Declaration of Kenneth D. Vaughan        7

1950's, which would have required an LTF of some type. Because of the time period of the harvest and the locations of the harvest units at the head of the bay, I would expect that an LTF would have most likely been a beaver slide facility or similar facility constructed at the head of the bay on what is shown as tidal flats in the primary base series topographic maps. I do not know what a physical inspection of the site would reveal.

i.  Indian River: There is an existing LTF near Indian River, in Tenakee Inlet on Chichagof Island. The LTF at this location has been reconstructed. Forest Service records show timber harvest adjacent to the current location in the 1920's, so I infer that there was a pre-statehood LTF somewhere in the area.

j.  Patterson Bay: Patterson Bay is also on Chichagof Island, off of Peril Straits, South Arm. Forest Service records show several harvest units operated in the late 1940's. The head of the bay shows some evidence suggestive of a simple LTF.

k.  Fick Cove: (Identified in my 2002 declaration as "Flick" Cove. Both names are noted on the atlas, but

Fick Cove is the official geographic name.) Fick Cove is located immediately southeast of Patterson Bay. Forest Service records show harvest in the mid-1950's. There is evidence of old roads leading to the head of the cove. Infrastructure patterns suggest that water transport was required and some constructed facility would have been needed at the head of the cove. However, I know of no physical evidence on the ground of a pre-statehood LTF.

9. Identifying all pre-statehood LTF sites within the Tongass National Forest and making a public land determination is not simply a ministerial task. It would be a time-consuming, onerous, and expensive process with a limited probability of success.

   a. The Forest Service would need to attempt to identify the location and footprint of constructed facilities built before statehood. Due to reconstruction and/or natural degradation of physical evidence, the actual success of any such effort might be very limited.

   b. After identification of the location and footprint, the Forest Service would need to obtain survey

instructions from the State of Alaska Division of Mining, Lands, and Water, Technical Services Branch.

c. The determination and survey of mean high tide will require the skills of cadastral surveyors with associated travel, logistics, and support costs.

d. Cadastral surveyors will need to determine the corners and survey each claimed parcel.

e. The Forest Service would then need to prepare and review the plat of each identified parcel.

f. The plat of each parcel and claim of ownership by the United State would then need to be recorded. It is possible that any claim of ownership by the United State could be challenged in court.

10. Attached to this declaration is an old photo that depicts both a native log crib and a single A-Frame structure.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 30th day of April, 2010.

KENNETH D. VAUGHAN

Peratrovich v. US
No. 3:92-cv-0734-HRH
Declaration of Kenneth D. Vaughan        10